**W. E. COX**

v.

**PROCESS ENGINEERING, INC., and T. M. Jones.**

**No. 8165.**

Court of Civil Appeals of Texas, Amarillo.

June 21, 1971.

Rehearing Denied July 6, 1971.

Monning & Hazlewood, Jack Hazlewood, Amarillo, for appellant.

Richards & Ferguson, Floyd H. Richards, Dalhart, for appellees.

REYNOLDS, Justice.

This appeal results from an instructed jury verdict and judgment entered thereon in favor of defendants. Affirmed.

Defendant Process Engineering, Inc., hereinafter referred to as Process, as the prime contractor, contracted with Welch Grain Company, hereinafter referred to as owner, to build a feed mill on the owner's premises. Process, through its president C. E. Ellis, then subcontracted the erection of the bin unit component to plaintiff W. E. Cox and agreed to pay plaintiff $7,000.00 therefor. This subcontract provided that Cox would pay defendant T. M. Jones, an agent of Process, $1,000.00 "for services rendered". The prime contract was not made a part of the subcontract and Cox never saw it.

Before Cox's contract work was completed and at a time he had been paid only $4,000.00, Cox alleged he was evicted from the premises by the owner, and filed suit against Process, the owner and Jones. The owner's plea of privilege was sustained; that portion of the suit was transferred and is not involved in this appeal.

Cox amended his pleadings and asserted a cause of action against Process for breach of contract, and sought a declaratory judgment that Jones was not entitled to any portion of the subcontract price. The damages sought against Process were the $3,000.00 balance due under the subcontract, less the costs not to exceed $500.00 of completing the contract, and $294.00 for extra work. Cox did not seek recovery against Process under the theory of quantum meruit. Process and Jones filed a cross-action seeking recovery against Cox for $3,263.20 expenditures alleged necessary to complete the subcontract, including the sum of $1,000.00 Process paid Jones.

At the trial, plaintiff presented only his testimony, introduced in evidence the subcontract, and rested. Defendants' motion for instructed verdict was granted, and upon the jury's return of the instructed verdict for defendants, the trial court entered judgment denying plaintiff any recovery. Cox has appealed, his one point asserting that the trial court erred in sustaining defendants' motion for instructed verdict.

The legal proposition plead by plaintiff, which he asks us to establish for reversal of the trial court's judgment, is that a prime contractor has an implied contractual duty to protect the subcontractor from any interference in the progress of his work and to provide and maintain access to the job site, and that the eviction of the subcontractor by the owner constitutes a breach of this implied obligation by the prime contractor for which he is liable.

Counsel concede there is no Texas case directly considering and deciding this proposition, and our research has revealed no such case in this or any other jurisdiction. In support of this postulation, plaintiff cites the case of F. J. Lewis Mfg. Co. v. Snyder, 6 Cir., 37 F.2d 299 (1930). That case does hold that Snyder, the prime contractor, in subcontracting with Lewis to supply and apply a coal tar binder on a road project, assumed the obligation of providing Lewis with the site of the work; but the case is otherwise distinguishable and not controlling of the question before us. There, Snyder sublet the work although he was prohibited from doing so by the prime contract, which was made a part of the subcontract. Lewis was ready to perform but was prevented from doing so because the county engineer would not accept Lewis' tar. Snyder secured other tar and sued Lewis for the additional expense incurred. Evidence was offered to prove that Lewis' tar met the contract specifications. The nonperformance was the fault of Snyder. The court held that Snyder could not recover for nonperformance which resulted from his failure to carry out the contract. But the legal conclusion does not follow, and the case does not hold, that a prime contractor has an implied contractual duty to protect the subcontractor from any interference in the progress of the subcontractor's work.

Here the subcontract does not contain an express covenant that the prime contractor will furnish the subcontractor a site of work. Assuming arguendo that Process had an implied contractual obligation to furnish Cox with the site of work, and that Cox was wrongfully evicted to his damage by the owner, does Process thereby become liable? We must look to the basic principles governing relationships. Of course, it is elemental that a party to a contract who breaches it may be liable in damages to the other party; and Texas law recognizes liability in tort by a third party who causes damages by wrongfully interfering with the contractual relationship of a contractor and subcontractor. See American Surety Co. of New York v. Shaw, 69 S.W.2d 47 (Tex.Com.App.1934, holding approved); Housing Authority of City of Dallas v. Hubbell, 325 S.W.2d 880 (Tex.Civ.App.—Dallas 1959, writ ref'd n.r.e.). But in all such cases the wrongdoer was held liable only for his own wrongful acts and not for those of another. Hubbell holds that an owner's contractual obligation to coordinate the work of various contractors does not mean the owner is responsible for damages suffered by one contractor resulting from the torts committed by another contractor. It necessarily follows that one party to a contract is not liable to the other contracting party for breach thereof occasioned by the act of a third party unless he was in pari delicto or participated to a culpable degree with the wrongdoer in the act. Thus, the criterion to be applied is whether Process comes within this area of liability.

Cox testified that he proceeded to work under his contract. When a painter he had hired was preparing to paint the bins, a Mr. Welch, presumably a member of the owner firm, informed Cox that he was not to paint until steel support bands had been placed around the grain hoppers. This work was not called for in Cox's contract. Cox contacted Ellis, who then informed Cox that Process had proposed to the owner that Cox might be persuaded to install the bands free of charge if Process were given another contract to do additional work, a part of which Cox would do, at the facility. Ellis told Cox the other contract was not secured. Ellis asked Cox to go back to the job site and he would work things out with Welch. Cox told Ellis that he could not continue to wait and if Ellis could not authorize him to "go ahead", then the only thing Cox could do would be to "pull out" and go home. Cox did not do any more work after this time and, as to the painter, Cox testified, "(T)hey run him off". Ellis was not able to contact Welch at this time, and Cox agreed to a meeting on a Sunday, some three days later. At the appointed

**588**

time and place, Ellis met with Cox, but Welch did not appear. Other than discussing Cox's work, Cox did not testify to any other conversation he had with Ellis at the meeting, and there is no testimony as to any further conversations or negotiations.

 The evidence demonstrates that, rather than participating with the owner in the alleged eviction, Process was attempting to prevent any interruption and to arrange for Cox to complete his contract. As a matter of law, the evidence fails to show that Process was in pari delicto or participated to a culpable degree with the owner in the act complained about by Cox.

· [4, 5] A cause of action must both be alleged and proved in order to obtain relief from the party sought to be held liable. A. H. Belo Corp. v. Blanton, 133 Tex. 391, 129 S.W.2d 619 (1939). A cause of action cannot exist unless one party fails to perform an obligation owed to another. The suit by plaintiff against Process is an ex contractu action based on the alleged non-performance of an implied contractual duty. In this case the evidence shows as a matter of law that Process did not breach any duty, express or implied, owed to Cox. Failure to perform an act neither expressly nor impliedly contracted to be done or performed does not constitute, in law, a breach of contract.

We hold, therefore, that a prime contractor is not liable to a subcontractor for a breach of contract occasioned by the act of a third party, even if the third party be the owner, absent a showing that the prime contractor was in pari delicto or participated to a culpable degree with the third party in the commission of the act. To hold otherwise would be to constitute the prime contractor an insurer of the subcontractor. There is no sound basis in law or reason for such holding, and we decline to so hold. Consequently, plaintiff failed to allege and prove a cause of action against defendant Process.

 Cox admitted that he had not paid Jones any money under the subcontract,

and defendants recovered nothing by their cross-action under the court's judgment. Therefore, the phase of the subcontract on which Cox sought a declaratory judgment has become moot.

The trial court correctly granted the motion for instructed verdict. In view of our disposition of this appeal, we do not reach the questions whether the evidence raises triable fact issues as to whether Cox was evicted or abandoned his contract, whether Cox failed to prove substantial performance, or whether he failed to prove damages.

The judgment of the trial court is affirmed.