CALVIN V. KOLTERMANN, INC., et al., Appellants,

v.

UNDERREAM PILING CO. and D. E. W., Inc., Appellees.

D. E. W., INC., Appellant,

v.

CALVIN V. KOLTERMANN, INC., et al., Appellees.

Nos. 15889 and 15920.

Court of Civil Appeals of Texas, San Antonio.

March 1, 1977.

Rehearing Denied April 12, 1978.

Peter Torres, Jr., James F. Gardner, Wolff & Wolff, Phillip Yeager, San Antonio, for appellants.

Wolff & Wolff, Phillip Yeager, Peter Torres, Jr., James F. Gardner, San Antonio, for appellees.

KLINGEMAN, Justice.

This is a consolidated cause of three suits arising out of a contract between Calvin V. Koltermann, Inc. as general contractor, and San Antonio Independent School District, to construct an administrative center. Koltermann subcontracted with Underream Piling Co. for excavation and foundation work, with Redondo Manufacturing Co., Inc. for pre-cast concrete, and with D. E. W., Inc. for plumbing and heating work. After the election of new members of the School Board, the Board of trustees of San Antonio Independent School District voted to cancel the Koltermann contract.

On June 17, 1976, Redondo Manufacturing Co., Inc. [herein called "Redondo"], not a party to this appeal, filed a suit against Calvin V. Koltermann, Inc. [herein called "Koltermann"], alleging that the San Antonio Independent School District [herein called "SAISD"] had entered into a contract with Koltermann on March 29, 1976 in which Koltermann agreed to construct the administration building involved. Redondo asserted that its bid for pre-cast concrete was accepted by Koltermann and that Redondo was authorized to proceed pursuant to the agreement. Similarly, D. E. W., Inc. [herein called "D. E. W."] and Underream Piling Co. [herein called "Underream"] filed suits against Koltermann on their subcontracts. All the causes were consolidated and trial was before a jury.

The jury, in answer to special issues submitted, found: (1) that the School Board of

Trustees authorized Grace Durr, President, to sign the contract of March 29, 1976 between SAISD and Koltermann; (2) that on such date, SAISD had sufficient unencumbered funds to pay the obligation of the contract of March 29, 1976 between Koltermann and SAISD; (3) that Redondo, Underreafn, and D. E. W., as subcontractors, and Koltermann, on or about March 30, 1976, agreed upon all of the essential and important terms of their respective agreements with Koltermann; (4) that the actions of SAISD, causing Koltermann to breach his contract with Redondo, Underream, and D. E. W., were with justifiable cause and were done to serve some legitimate interest of SAISD; (5) that Redondo, Underream, and D. E. W., subcontractors, and Koltermann, general contractor, did not understand and agree that each would be relieved of its respective obligations to the other if SAISD cancelled or terminated its contract with Koltermann; (6) that the reasonable and necessary costs incurred by Underream for remaining ready and able to perform its subcontract with Koltermann between the time Underream received notice to stop work and the time it received notice that the contract had been terminated, is $16,048.00; (7) that the reasonable and necessary costs which would have been incurred in such contracts for completion of the respective agreements with Koltermann are as follows: Redondo—$160,000.00; Underream—$16,828.00; D. E. W.—$285,451.00.

Koltermann and SAISD moved for judgment n.o.v.; SAISD moved for a take nothing judgment; and D. E. W. and Underream moved for judgment under the verdict. Judgment was entered by the trial court as follows: (1) Koltermann's and SAISD's motions for judgment n.o.v. are overruled; (2) Redondo take nothing from Koltermann and SAISD; (3) Underream receive $16,048.00 against Kolterman; (4) Koltermann receive as an indemnity from SAISD, $16,048.00; (5) D. E. W. receive $4,970.00 from Koltermann, but takes nothing from SAISD; (6) Koltermann receive an indemnity from SAISD of $4,970.00.

SAISD does not here complain of the indemnity awards to Koltermann.

## KOLTERMANN'S AND SAISD'S APPEAL

All of Koltermann's and SAISD's points of error are no evidence or legal insufficiency points of error. Koltermann's and SAISD's first point of error complains that the trial court erred in overruling their motion for judgment n.o.v. because Underream and D. E. W. failed to exhaust their administrative remedies as required by § 11.13 of the Tex.Education Code (1972).

§ 11.13 provides in part as follows: (1) Persons having any matter of dispute among them arising under the school laws of Texas or any persons aggrieved by the school laws of Texas or decisions of any board of trustees or board of education may appeal in writing to the Commissioner of Education, who, after due notice to the parties interested, shall hold a hearing and make and render a decision without cost to the parties involved, but nothing contained in this section shall deprive any party of any legal remedy.

Appellees, Underream and D. E. W., assert that appellants' first point of error should be overruled because (1) the failure of appellants to file a motion for new trial precludes their raising on appeal the purported failure of appellees to exhaust their administrative remedies; (2) the matter of failure to exhaust administrative remedies is moot because appellees were not awarded a judgment against SAISD; (3) appellees did not fail to exhaust the administrative remedies because there were no administrative remedies to exhaust in such a case.

We have concluded that appellants' point of error No. 1 is without merit and should be overruled. Appellees are subcontractors whose contract was with the general contractor and not with SAISD. Their obligations, rights, and duties arose out of their subcontracts. Appellees here were not aggrieved by the school laws of

Texas or by any actions or decisions of any board of trustees, and the administrative remedies of the Texas Education Code are inapplicable. Appellees here contracted only with Koltermann and not SAISD, and the validity of these contracts was an issue, making the central question legal and not factual.

It is a well established rule that, in all matters pertaining to the administration of school law, involving questions of fact as distinguishable from pure questions of law, resort must be first had to school authorities and the method of appeal there provided for exhausted before the courts will entertain jurisdiction of a complaint with regard to such matters. *State ex rel. Nevills v. Sanderson,* 88 S.W.2d 1069 (Tex.Civ.App. —Waco 1935, no writ).

However, we do not have such a situation here. The subcontractors here involved contracted with Koltermann alone and not SAISD,[1] and we have here involved the validity of the contracts between the general contractor and the subcontractors. The central question is a legal one, not factual.

*See Board of Trustees of Crystal City Ind. School Dist. v. Briggs,* 486 S.W.2d 829 (Tex.Civ.App.—Beaumont 1972), where the court said:

Whether or not District was entitled to reassign Briggs under the terms of the contract was one of law urged by District in defense of Briggs' claim for money. The Commissioner of Education does not exercise judicial power to determine the legality of contracts or the legal rights of parties thereto. Such are matters for the courts to determine under our system of a division of powers of government. Texas Constitution, Art. 2, § 1, Vernon's Ann.St.; *Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699, 711 (1959); *Scott v. Texas State Board of Medical Examiners,* 384 S.W.2d 686, 691 (Tex.1964).

■ Koltermann's and SAISD's second point of error is that the trial court erred in overruling their motion for judgment n.o.v. because there was no evidence to support the jury's answer to Special Issue No. 1;[2] that the undisputed evidence shows that the School Board did not authorize Grace Durr, as President, to sign the contract of March 29, 1976; and that such contract is void. We disagree. Under the record, the jury could properly conclude there was such authorization from a number of things in the record, including (a) the minutes of the meeting of the Board of Trustees accepting the low bid of Koltermann on the construction of the administration building; (b) the signature of the president on the contract, with attestation by secretary; (c) testimony that Koltermann performed no work on such building until he had received approval of the architect for the SAISD; (d) an exhibit which is a written authorization from SAISD to Koltermann to proceed; (e) testimony by some of the trustees evidencing recognition of the contract but asserting that Koltermann breached the contract; (f) testimony by some of the trustees, who voted to give notice to cease work, that they ran for School Board on a platform to repeal the action of the School Board pertaining to the construction of the administration building; (g) testimony by the architect for the School Board that he was authorized by the Board to draw the work-

---

1. In the absence of an express contract making the owner liable, the compensation of persons who perform labor for or furnish material to the builder are generally to be paid by such builder, and not by the owner, although the work is done under the direction of and in accordance with the plans furnished by the owner's engineer; and subcontractors and materialmen must resort for payment to the builder or contractor, as in the absence of an express contract there is not privity between a subcontractor employed by the general contractor and the owner, and the liability of the owner is only to the general building contractor, who is liable to subcontractor. *Carruth v. Valley Ready-Mix Concrete Co.,* 221 S.W.2d 584 (Tex.Civ.App.—Eastland 1949, writ ref'd).

2. The jury found that SAISD authorized Grace Durr, as President of the Board of Trustees, to sign the contract between SAISD and Koltermann.

ing drawings for the administration building, which he did, and that after the acceptance of the low bid he told Koltermann to proceed; (h) testimony that, thereafter, Koltermann performed work under such contract and certain payments were made under the contract.

◼ Appellees further contend that any irregularities in the execution of the SAISD contract are immaterial to this appeal since the appellees are subcontractors who are suing on their contract with Koltermann and not on Koltermann's contract with the School Board. Such contention is well taken.

◼ By their third point of error, Koltermann and SAISD assert that the trial court erred in overruling their motion for judgment n.o.v., in that the evidence shows that appellees and Koltermann did not agree upon all of the essential and important terms of their respective agreements and, therefore, there was no evidence to support the jury's answer to Special Issue No. 3,[3] and as a matter of law there was no contract between appellees and Koltermann. In support of such contention they rely on cases holding that, to constitute a contract, the minds of parties must meet with respect to all of the subject matter of the contract and as to all of its essential terms. *Smulcer v. Rogers,* 256 S.W.2d 120 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.); *South Texas Water Co. v. Bieri,* 247 S.W.2d 268 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.); *H. B. Zachry Co. v. Maerz,* 223 S.W.2d 552 (Tex.Civ.App.—San Antonio 1949, no writ); 13 Tex.Jur.2d, *Contracts* § 14 (1960). We have no argument with these cases or authorities, but they are not here applicable.

The undisputed evidence shows that Koltermann and appellees, Underream and D.

E. W., had an oral contract which was to be later reduced to writing; that it is customary for the subcontractor to begin work on the project before a written contract is signed; that here, before any such written contract was prepared, some work had been actually performed pursuant to such oral contract. There is evidence of acts by each party which indicate assent to the oral agreement. It is clear that Koltermann initiated work on the job which included work by these subcontractors and that some payments were made by SAISD to Koltermann. A meeting of the minds can be implied from and evidenced by conduct and course of dealing of the involved parties.

Appellants' point of error No. 3 is without merit and overruled.

◼ Koltermann's and SAISD's point of error No. 4 asserts that the trial court erred in overruling their motion for judgment n.o.v., in that the evidence showed that appellees and Koltermann would be relieved of their respective obligations if SAISD cancelled its contract with Koltermann and therefore there was no evidence to support the jury's answer to Special Issue No. 5.[4]

The evidence shows that the subcontractors and Koltermann had contracts which were separate and independent from that of Koltermann's with SAISD. There is nothing in the contracts, documents, or evidence which shows or indicates that the cancellation of SAISD's contract with Koltermann would terminate the subcontractors' contracts with Koltermann. The evidence does show that the oral contracts were later to be reduced to writing and there was introduced into evidence a standard A.I.A. form of subcontract which was to be used for this purpose. Such form does not contain a provision to the effect that if

3. The jury found that Koltermann, as general contractor, and Redondo, Underream, and D. E. W., as subcontractors, agreed upon all of the essential and important terms of their respective contracts.

4. In answer to Special Issue No. 5, the jury found that the plaintiffs and Koltermann did not understand and agree that each would be relieved of its respective obligations to the other if SAISD cancelled or terminated the contract with Koltermann.

the contract between the owner and the general contractor is terminated, the contracts between the general contractor and subcontractors would be terminated.

A court cannot make a contract for the parties. We can declare that an implied covenant exists only where there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contract which they have made. Before a covenant will be implied, it must appear from the express terms of the contract that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, or that it is necessary to imply such covenant in order to give effect to and to effectuate the purpose of the contract as a whole. *Freeport Sulphur Co. v. American Sulphur Royalty Co. of Texas,* 117 Tex. 439, 6 S.W.2d 1039 (1928); *Emmord's, Inc. v. Obermiller,* 526 S.W.2d 562 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

Where the obligation to perform is absolute, impossibility of performance occurring after the contract was made is not an excuse for nonperformance if the impossibility might have reasonably been anticipated and guarded against in the contract. This is true even though an impossibility may subsequently have occurred by virtue of an act of God or some other circumstance over which the parties had no control. Impossibility of performance is also not an excuse if it is subsequently occasioned by the act or default of the promisor or by the acts of a third party. 13 Tex.Jur.2d, *Contracts* §§ 318, 319 at 578 (1962); *Foster v. Atlantic Refining Co.,* 329 F.2d 485 (5th Cir. 1964), at 862.[5]

Appellants' point of error No. 4 is overruled.

By their last point of error, Koltermann and SAISD complain that the trial court erred in overruling their motion to enter judgment in that Special Issue No. 4[6] supported the entry of a take nothing judgment. A take nothing judgment was entered as against SAISD. Koltermann and SAISD, on this appeal, assert that the same ruling ought to apply to Koltermann, and rely heavily on *Cox v. Process Engineering, Inc.,* 472 S.W.2d 585 (Tex.Civ.App.—Amarillo 1971, no writ). *Cox* was a suit by a subcontractor against a general contractor in which the owner evicted the subcontractor from the job. Such suit was premised on a breach of an implied contract to protect the subcontractor from interference with the progress of his work and to provide and maintain access to the job site. It was alleged that the eviction of the subcontractor by the owner constituted a breach of this implied obligation by the prime contractor, for which he is liable. The subcontract had no provision that the subcontractor would be furnished a job site by the general contractor. The court held for the general contractor, and stated:

A cause of action must both be alleged and proved in order to obtain relief from the party sought to be held liable. *A. H. Belo Corp. v. Blanton,* 133 Tex. 391, 129 S.W.2d 619 (1939). A cause of action cannot exist unless one party fails to perform an obligation owed to another. The suit by plaintiff against Process is an ex contractu action based on the alleged nonperformance of an implied contractual duty. In this case the evidence shows as a matter of law that Process did not breach any duty, express or implied, owed to Cox. Failure to perform an act neither expressly nor impliedly contract to be done or performed does not constitute, in law, a breach of contract.

---

5. As a general rule, the fact that an act is impossible to perform at the time the contract is made is not a valid excuse for nonperformance of the act, unless the contract so provided. 13 Tex.Jur.2d, *Contracts* § 319.

6. In Special Issue No. 4 the jury found that the action of SAISD causing Koltermann to breach his contract with the subcontractors, was with justifiable cause and was done to serve some legitimate interest of SAISD.

In the case before us appellees had no dealing with SAISD and SAISD did not evict or order appellees off the job. Appellees' contracts were with Koltermann alone. In *Cox,* the general contractor never told the subcontractor to stop his work, and did not evict the subcontractor, while in our case, Koltermann did tell the subcontractors to stop their work and his suit is premised on such breach of contract. These cases are distinguishable on their facts, and under the record herein, we decline to follow *Cox.*

Without reiterating all of the authorities hereinbefore discussed, we feel that they are here applicable, and this case falls within the rule in *Ellwood v. Nutex Oil Co.,* 148 S.W.2d 862 (Tex.Civ.App.—El Paso 1941, writ ref'd n.r.e.), as follows:

We think this case falls within the general rules applicable to contracts, that one who unconditionally obligates himself to do a thing possible of performance, must be held to perform it (*Kingsville Cotton Oil Co. v. Dallas Waste Mills,* Tex.Civ. App., 210 S.W. 832; *Masterson v. Amarillo Oil Co.,* Tex.Civ.App., 253 S.W. 908, writ refused); and though performance, subsequent to the contract, may become difficult or even impossible, does not relieve the promisor, and particularly where he might have foreseen the difficulty and impossibility. *Levy Plumbing Co. v. Standard Sanitary Mfg. Co.,* Tex.Civ. App., 68 S.W.2d 273 writ refused; *Embry v. Lewis,* Tex.Civ.App., 19 S.W.2d 87.

Under the record here, the jury's answer to Special Issue No. 4 does not release Koltermann of his obligation to the subcontractors.

All of Koltermann's and SAISD's points of error have been considered and all are overruled. Koltermann and SAISD do not here complain of the amount of the damage award.

## D. E. W.'s APPEAL

All of D. E. W.'s points of error pertain to the damages awarded. By such points of error it asserts there is no evidence and insufficient evidence to support the jury's answer to Special Issue No. 7C,[7] and that the jury's answer thereto is against the great weight and preponderance of the evidence.

The testimony on which D. E. W. relies is that of an interested witness, Mr. Wurzbach, who is President and sole shareholder of D. E. W. He testified that he bid $290,-451.00 to install the heating, air-conditioning, plumbing and ventilation in the building involved; that he was given notice to proceed on March 30, 1976; that he started work on that date; that he was told to stand by on April 6, and did no work after that time; that up to that time the work that D. E. W. did consisted of negotiations with numerous suppliers and manufacturers of equipment to be installed, preparation of quantity take-offs, and familiarizing itself with the job; and that a reasonable charge for the work done is $5,000.00. He further testified that the reasonable cost of completion of D. E. W.'s contract was $224,073.00. He was cross examined extensively as to how he arrived at such figure and his testimony is somewhat vague and confusing. Such cross examination indicated that he was not sure how much profit he was to make on the contract, or exactly how he arrived at the figure of $224,073.00 as the reasonable cost of completion. In answer to some of the questions as to individual items of such cost, he stated that the figures were ones that he pulled out of the air. He testified that his anticipated profit was $61,378.00, which is approximately the difference between the bid price and his completion price. He stated that such profit might be considerably more or considerably less.

The only other testimony pertaining to damages was by Koltermann, who testified that D. E. W. had men working on the job on either March 30th or 31st, and that D. E. W. did not submit shop drawings to him.

7. In answer to Special Issue No. 7C, the jury found that the reasonable and necessary cost which would have been incurred by D. E. W. for completion of its agreement with Koltermann, was $285,451.00.

It is sometimes said that the courts have always recognized the general rule that the measure of damages for breach of contract is just compensation for the damages actually sustained by the plaintiff as the result of defendant's action. In *A. B. C. Truck Rental & Leasing Co. v. Pletz*, 540 S.W.2d 532 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.), this Court said:

It is fundamental that damages for breach of contract are to compensate one party to a contract for the breach by the other by awarding the value of the expected performance. 17 Tex.Jur.2d, Damages, § 51 (1960). This value is usually determined in one of two ways: (1) by awarding the difference in the market value of the property as completed and the value if completed in accordance with the plans and specifications; or (2) by awarding the cost of correction or completion.

The general rule is that the testimony of an interested witness does no more than raise a fact issue to be determined by the jury. While there are exceptions to the rule, it seems settled that when testimony comes from an interested party and is of such a nature that cannot be readily contradicted if untrue, an issue relating to the credibility of the witness is presented. *James T. Taylor & Son, Inc. v. Arlington Ind. School Dist.*, 160 Tex. 617, 335 S.W.2d 371 (1960).

While we will not here attempt to go into the thought process by which the jury arrived at its figure of $285,451.00, it might logically be assumed that the jury accepted Wurzbach's testimony that a reasonable charge for the work done by D. E. W. was $5,000.00, and subtracted this figure from the bid figure of $290,451.00, in arriving at its cost of completion answer; and that the jury refused to believe the witness' testimony that the reasonable cost of completion was $224,073.00.

It is the jury's province to determine the credibility of the witness and the weight to be given his testimony. In exercising such power, the jury may consider the demeanor of the witness and determine his credibility under the facts and circumstances of the particular case. It may accept part of a witness' testimony and reject the remainder, if the facts of the case justify such action. In short, generally, the jury is free to believe or reject all or any part of the testimony of an interested witness or a party to the suit. The jury apparently disregarded much of the testimony of the witness here involved and concluded from the testimony as a whole that the reasonable cost of completion was $285,-451.00. Since the weight to be given the evidence and the witness' credibility is ordinarily for the trier of the facts, the findings by the jury are binding on the appellate court unless it finds that there is no evidence to support such finding or that such finding is so against the great weight and preponderance of the evidence as to the manifestly unjust. We do not so find. All of D. E. W.'s points of error are overruled.

Finding no reversible error in the record, we affirm the judgment of the trial court.