IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20541
_____

ASSICURAZIONI GENERALI

                    Plaintiff - Appellee

        v.

CROWN CENTRAL PETROLEUM CORPORATION

                    Defendant - Appellant

            and

CECIL A BUFFALO; DONALD RAY HARRISON; ROBERT KEITH SUITS, JR

            Defendants

_____

Appeal from the United States District Court
for the Southern District of Texas
**(CA-H-95-3240)**
_____
**May 23, 1996**
Before KING, WIENER and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    Assicurazioni Generali SpA ("Generali") brought an action

---

    [*]    Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

against Crown Central Petroleum Corporation ("Crown"), among others, seeking a declaratory judgment that it was not obligated to provide insurance coverage to Crown as an additional insured under an insurance policy issued to Reactor Services International ("RSI"). Crown appeals the district court's granting of summary judgment in favor of Generali. We reverse.

## I. BACKGROUND

Generali issued a comprehensive general liability insurance policy to RSI for the period November 1, 1991, through November 1, 1992 (the "Generali/RSI Policy"). The policy contained a blanket additional insured endorsement that provided:

> Coverage includes additional assured as required by contract but only in respect of work performed by or on behalf of the assured.

For the purpose of preparing certificates of insurance to evidence this endorsement, RSI presented its insurance agent, Gow and Hanna Insurance, with a list of RSI's regular customers, including Crown.

On April 23, 1992, a tail gas recovery unit malfunctioned at Crown's refinery in Pasadena, Texas. That afternoon, Ronnie Reynolds, Crown's maintenance manager, phoned a salesperson at RSI about servicing the recovery unit.[1] Reynolds arranged for RSI to

---

[1] Presumably, the salesperson was Mike Elmore. Neither Reynolds or Elmore was certain that Elmore was the person contacted on this occasion. However, John Shank, executive vice president of RSI, testified as to how RSI ordinarily would come to send a work crew to Crown: "The most logical way is that Crown would call Mike Elmore, their sales rep, and indicate they had a job . . . ."

2

come to the refinery the next morning, April 24, 1992.  Reynolds and the RSI salesperson discussed the basics of the job and Reynolds obtained a price estimate.  Reynolds then contacted Ed Lofland in Crown's purchasing department to obtain a purchase order number for the job.  Lofland telephoned RSI and left a message for salesperson Mike Elmore, notifying him that RSI needed to sign Crown's indemnification agreement.  Reynolds also called to inform RSI of the purchase order number and the need to sign the paperwork; he did not discuss on the phone the specifics of Crown's insurance requirements.

Lofland prepared a written, computer-generated contract to be executed by Crown and RSI (the "Crown/RSI Contract").  The contract specified that its effective date was April 23, 1992.  Paragraph 1.5 of the Crown/RSI Contract required RSI to make Crown an additional insured on RSI's Policy (the "Additional Insured Requirement"):

> . . . CONTRACTOR shall at all times during the progress of the Work, and at CONTRACTOR's own expense, on forms and with insurers acceptable to CROWN, carry and maintain the minimum insurance coverage which is described in Exhibit "A," which Exhibit is attached to this AGREEMENT and made a part of this contract.  CONTRACTOR shall furnish to CROWN the original or copies of the insurance certificates which evidence such insurance coverage.  CROWN shall be added as an additional named insured in all such certificates, except insurance providing protection against worker's or workmen's compensation claims.

On the afternoon of April 23, 1992, RSI's salesperson told Leon Bryce, a superintendent for RSI, to go to the refinery the

3

next morning to sign Crown's paperwork. On the morning of April 24, 1992, purchasing manager James Davis signed the Crown/RSI Contract on behalf of Crown. Shortly before noon, Bryce arrived at Crown's offices to sign the Crown/RSI Contract as he had been instructed. However, because the Crown representative with whom Bryce was to meet had stepped out of the office, Bryce proceeded to the RSI job site without signing the contract.

Thirty to forty-five minutes later, a fire occurred at the RSI job site on Crown's premises. Two members of the RSI crew were injured (the "Accident"). Approximately three hours after the Accident, Bryce returned to Crown's offices and signed the Crown/RSI Contract. Four months later, the two injured RSI employees sued Crown in the 189th District Court of Harris County, Texas. The lawsuit, styled <u>Donald Ray Harrison and Robert Keith Suits, Jr. v. Crown Central Petroleum Corp. And Cecil A. Buffalo</u>, Civil Action No. 92-035808, resulted in monetary loss to Crown.

Generali brought a declaratory action in the United States District Court for the Southern District of Texas to determine the legal rights of certain parties under the Generali/RSI Policy. Crown filed a third-party complaint against Gow and Hanna Insurance and others. Cigna intervened. Generali moved for summary judgment against Crown,[2] arguing that (1) RSI was not contractually bound to

---

[2] This was an amended motion for summary judgment; Generali earlier filed a motion for summary judgment that was withdrawn and is not at issue in this appeal.

4

include Crown as an additional insured at the time of the Accident, (2) the known-loss rule under Texas law precluded making insurance coverage retroactive when the insured had knowledge of the incident at the time coverage was created, and (3) the Accident was not an "occurrence" as defined by the Generali/RSI Policy. The district court entered a memorandum and order granting Generali's motion for summary judgment on April 4, 1995. The order was not appealable because it did not dispose of Generali's claims against the other defendants, Crown's third-party claims, or Cigna's claims. Therefore, Crown filed an unopposed motion for severance. On May 17, 1995, the district court signed an order severing Generali's claims against Crown into a new case and subsequently the district court amended the order to renumber the severed case. Crown filed a notice of appeal eight days after the severance. On September 25, 1995, the district court entered a Rule 58 separate-document judgment; that same day, Crown filed a notice of appeal from the Rule 58 judgment.[3]

## II. ANALYSIS

We review the granting of summary judgment <u>de novo</u>, applying the same criteria used by the district court in the first instance.

---

[3] There was a question as to whether the severance order of May 19, 1995, could be treated as a Rule 58 judgment and, thus, whether Crown's first notice of appeal was timely filed. Fed. R. Civ. P. 58. This question became moot after the district court entered the Rule 58 judgment on September 25, 1995, and Crown timely filed a second notice of appeal.

Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). First, we consult the applicable law to ascertain the material factual issues. King v. Chide, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994); FDIC v. Dawson, 4 F.3d 1303, 1306 (5th Cir. 1993), cert. denied, 114 S. Ct. 2673 (1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the evidence is such that a reasonable jury could return a verdict for the nonmoving party, a dispute about a material fact is "genuine." Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 533 (5th Cir. 1996)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 809 (5th Cir. 1991).

In the instant case, the district court concluded that, under Texas law,[4] the known-loss doctrine precluded coverage for Crown under the Additional Insured Requirement of the Crown/RSI

---

[4] The parties agree that Texas substantive law governs this dispute.

Contract.[5]   According to the known-loss doctrine, an attempt to create insurance coverage retroactively for an accident that predates the policy's coverage is legally ineffective if either the insurer or the insured knew of the accident at the time the coverage is created.  Burch v. Commonwealth County Mut. Ins. Co., 450 S.W.2d 838, 840-41 (Tex. 1970).  Because it is undisputed that Bryce did not sign the Crown/RSI Contract on behalf of RSI until after the Accident and because the Additional Insured Requirement was not discussed explicitly before Bryce signed the contract, the district court found that Crown did not become an additional insured under the Generali/RSI Policy until after the Accident.

Crown argues, however, that RSI accepted Crown's offer, including the Additional Insured Requirement, on April 23, 1992, when RSI agreed to sign Crown's paperwork, or at the latest, when RSI began servicing Crown's tail gas recovery unit on April 24, 1992.  Accordingly, Crown maintains that, because the complete Crown/RSI Contract was formed and became effective before the Accident, the known-loss doctrine is not implicated in the case at bar.  Based on the summary judgment evidence and Texas law, we find that there is a fact question as to whether the Additional Insured Requirement was in effect at the time the Accident occurred.

---

[5]     In its amended motion for summary judgment, Generali argued, inter alia, that the Accident did not meet the definition of "occurrence" under the terms of the Generali/RSI Policy because it was "expected or intended."  Although the district court acknowledged but did not address this argument, Generali reurges it on appeal.

7

A binding contract between two parties requires an offer and acceptance. Nickerson v. E.I.L. Instruments, Inc., 874 S.W.2d 936, 939 (Tex. App.--Houston [1st Dist.] 1994, writ denied); see also Crest Ridge Constr. Group, Inc. v. Newcourt Inc., 78 F.3d 146, 152 (5th Cir. 1996)(Benavides, J., specially concurring). There must be a meeting of the minds as to all of the contract's essential terms. Smith v. Renz, 840 S.W.2d 702, 704 (Tex. App.-Corpus Christi 1992, writ denied); Calvin V. Koltermann v. Underream Piling Co., 563 S.W.2d 950, 956 (Tex. Civ. App.--San Antonio 1977, writ ref'd n.r.e.); see also Mesa Petroleum Co. v. Coniglio, 629 F.2d 1022, 1026 (5th Cir. 1980). In order to accept the offer, however, it is not necessary that a party know all of the terms. Lone Star Steel Co. v. Scott, 759 S.W.2d 144, 152 (Tex. App.--Texarkana 1988, writ denied) (citing Restatement (Second) of Contracts § 23 cmt. e). A contract may be formed as long as the parties know the substance, if not all the details, of the agreement. Karl Rove & Co. v. Thornburgh, 39 F.3d 1273, 1293 n.87 (5th Cir. 1994).

The district court did not explicitly reject, and Generali does not necessarily dispute, Crown's contention that a contract between Crown and RSI existed at the time of the Accident.[6]

---

[6] In Generali's reply to Crown and Cigna's responses to its amended motion for summary judgment, Generali stated that it "does not necessarily disagree that RSI and Crown Central may have reached some agreement prior to the execution of the written Agreement by RSI."

Generali's primary argument appears to be that the Additional Insured Requirement was an essential term of the Crown/RSI Contract and, because this term was not specifically discussed or agreed to--as all essential terms must be, the Crown/RSI Contract was not effective until Bryce actually signed the instrument containing the Additional Insured Requirement. Generali appears to argue alternatively that, while a contract may have existed at the time of the Accident, the Additional Insured Requirement was not a part of that contract.[7]

According to Texas law, acceptance of an offer need not be in writing. "[P]arties may enter into an oral contract even though they are contemplating a formal writing." Cothron Aviation, Inc. v. Avco Corp., 843 S.W.2d 260, 263 (Tex. App.--Fort Worth 1992, writ denied). Moreover, performance of the act which the offeree was requested to promise to perform may constitute valid acceptance. Thomas v. Reliance Ins. Co., 617 F.2d 122, 128 (5th Cir. 1980); United Concrete Pipe Corp. v. Spin-Line Co., 430 S.W.2d 360, 364 (Tex. 1968); see also Restatement (Second) of Contracts §§ 31-32. "The rule in Texas is that a contract in writing signed by one party and expressly accepted orally by the other, o[r] the terms thereof performed and the benefits thereof accepted, is in law the written contract of the parties and binding on both."

---

[7] Generali concedes that RSI accepted an offer from Crown before the Accident. However, the contract so created cannot be the Crown/RSI Contract if the Additional Insured Requirement was an essential term of the Crown/RSI Contract as Generali suggests.

Turner, Collie & Braden v. Brookhollow, Inc., 624 S.W.2d 203, 213 (Tex. Civ. App.--Houston [1st Dist.] 1981), aff'd in part and rev'd in part on other grounds, 642 S.W.2d 160 (Tex. 1982); Rubin v. Polunsky, 366 S.W.2d 234, 236 (Tex. Civ. App.--San Antonio 1963, writ ref'd n.r.e.).

Whether RSI accepted the entire Crown/RSI Contract before the Accident is a jury question. Because "[p]arties rarely express a direct intention as to the moment when they conceive themselves to be bound by a contract[,] . . . intention is usually an inference to be drawn by the fact finder from other facts and circumstances in evidence." Cothron 843 S.W.2d at 263-64. Crown maintains that RSI was required to assent to all of the terms and conditions contained in the Crown paperwork in order to secure the job servicing Crown's malfunctioning tail gas recovery unit. According to Crown, therefore, as of April 23, 1992, the Additional Insured Requirement was a part of its offer to RSI--a term without which Crown would not have contracted with RSI. Stated differently, the Additional Insured Requirement was a condition precedent to the formation of the contract. Under Texas law, whether parties intended to form a contract is a question for the jury. Crest Ridge, 78 F.3d at 151. Thus, "to the extent that the [condition precedent] concern[s] contract formation, it present[s] a jury question." Id. at 151 n.4; see Calvin, 563 S.W.2d at 956.

Reynolds testified that Crown and RSI "discussed the particulars of the job" by phone on April 23, 1992. He stated that

10

Crown and RSI agreed to the location of the job, the specific work to be done, the time the work was to start, the materials RSI needed to bring with them, and a price estimate. We believe that a reasonable jury could find that Crown and RSI did not consider the Additional Insured Requirement an essential term of the Crown/RSI Contract, but that Crown and RSI intended to be bound, before the Accident occurred, by the entire Crown/RSI Contract, including the Additional Insured Requirement. We believe a reasonable jury could determine that RSI accepted Crown's offer, on April 23, 1992, orally--or, on April 24, 1992, by performance.

Lofland testified that he called Elmore at RSI and told the receptionist "to have somebody come by to sign our indemnification agreement." Shank, executive vice president at RSI, testified that customers of RSI routinely included insurance requirements and hold-harmless clauses in their contracts. He indicated that the Crown/RSI Contract was "a very typical agreement between RSI and one of its customers." RSI superintendent Bryce testified that it was his understanding that RSI had agreed to undertake the job at the Crown refinery. He stated that an RSI salesperson told him, on April 23, 1992, that RSI was sending a crew to begin a job at Crown the next day. There is no dispute that RSI sent a crew to the Crown refinery and began performing the servicing required under the Crown/RSI Contract before the Accident occurred.

From the evidence presented to the district court, a reasonable fact finder could conclude that RSI routinely entered

11

into contracts with regular customers without knowing more about their respective hold-harmless and insurance requirements than that RSI must accept them. Testifying that, in order to work for a customer, RSI typically was required to agree to the customer's terms, Shank added: "We agree to their terms and conditions, as long as they fall within our guidelines." He stated that he knew of nothing in the Crown/RSI Contract that would have prevented RSI from agreeing to it.

In its Memorandum and Order, the district court did not address the issue of whether the Additional Insured Requirement was an essential term of the Crown/RSI Contract or expressly resolve the issue of whether RSI's assent by phone to Crown's offer, the beginning of performance, or both, constituted acceptance. The district court focused instead on one aspect of the parties' course of dealing. The court found that Crown's prior course of dealing was insufficient to establish that the Additional Insured Requirement was a term of the Crown/RSI Contract before the Accident:

> The summary judgment evidence precludes Crown Central's argument that because of its past course of dealing with RSI, RSI as a matter of law agreed to make Crown Central an additional insured even before RSI signed the agreement.

However, in order to defeat Generali's motion for summary judgment, it was not necessary for Crown to show that RSI, as a matter of law, agreed to the Additional Insured Requirement before the Accident. Rather, Crown was required to show only that a

12

reasonable jury could find that RSI agreed to the Additional Insured Requirement before the Accident. Meadowbriar, 81 F.3d at 533.

Reiterating verbatim the language of Generali's amended motion for summary judgment, the district court noted that, of the jobs performed by RSI in the dozen years preceding the Crown/RSI Contract, "[o]nly four of the jobs involved agreements that required RSI to make Crown Central an additional insured on its [Generali] policy" while, "on at least four occasions[,]" the jobs did not involve such a requirement. In light of the totality of the summary judgment evidence, we do not find this evidence determinative.

More telling, we believe, was the course of dealing with regard to RSI's acceptance of the terms and conditions included in Crown's written contracts. Crown produced summary judgment evidence that RSI regularly agreed to Crown's terms, sight unseen, and signed Crown's contracts without reading them. Shank testified that, in the case of routine customers, RSI considered itself bound by the terms and conditions of purchase orders received after the commencement of work. He was asked whether RSI had a policy of reviewing "the language contained in a purchase order before agreeing to do work for the customer[:]"

> A.   Yes, we reviewed the language in a contract before we'd do work with them on a first-time basis.

> Q.   Then after that you would not typically say, "Well,

13

wait a minute, I have to read" --

> A.   I don't read every purchase order on routine customers, no.

> Q.   Is there anything unusual, to your understanding, back in April of 1992 for a salesperson of RSI to agree to sign a customer's paperwork in order to do the work?

> A.   For routine customers, it was not.

Davis testified that there was no misunderstanding or confusion between Crown and RSI as to the nature of their contractual relationship.[8]  Bryce testified that, on June 23, 1992, he was instructed to go to Crown for a specific purpose--"[t]o sign a work order for the work."

Generali directs our attention to a number of contract cases in support of its contention that Crown and RSI had not agreed to the terms of the Crown/RSI Contract at the time of the Accident.

---

[8]   In a deposition taken on September 15, 1994, Davis was asked if RSI and Crown entered into a master service agreement in May 1992 to "avoid any confusion or misunderstandings in the future."

> A.   There never was any confusion between us and RSI about a contract.  The confusion is when there's an incident and attorneys get involved.
> .  .  .  .

> Q.   At the time you signed the blanket agreement with RSI in May of 1992, did you form an opinion at that particular time that there had been some misunderstandings or confusion about what legal obligations Crown had or that third-party contractors had?

> A.   Absolutely none between Crown and RSI.  They had absolutely no problem with signing our agreement because I felt like it was their understanding.  This was nothing more than what they had been doing all along.

In each of these cases, however, the existence of a contract, or the existence or meaning of one or more of its terms, was disputed by one of the purported parties to the contested contract. The case sub judice involves nothing of the sort. In this case, neither Crown or RSI contests the existence of the Crown/RSI Contract; neither party disputes the meaning or the validity of any of its terms, the Additional Insured Requirement included. "[Texas] courts rightfully assume that the parties to a contract are in the best position to know what was intended by the language they employed, by their subsequent acts relative to it." Droemer v. Transit Mix Concrete, 457 S.W.2d 332, 335 (Tex. Civ. App.-- Corpus Christi 1970, no writ) (citation omitted).

We find that there was sufficient summary judgment evidence as to when there was a meeting of the minds on the various terms of the Crown/RSI Contract, essential and otherwise, to carry these issues to the jury. Thus, summary judgment was improper on the issue of whether Crown was an additional insured under the Generali/RSI Policy when the Accident occurred. Because this issue must be left to the jury, there is no need to consider the known-loss issue or the "occurrence" issue raised by Generali.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and the case is remanded for further proceedings

15

consistent with this opinion.