TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00485-CV







Henna Chevrolet-Geo, Inc., Appellant



v.



Frank Ivy, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 231,604-B, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING








 Appellant Henna Chevrolet-Geo, Inc. ("Henna") appeals from the trial court order
granting summary judgment in Frank Ivy's favor in Henna's suit for breach of contract and
negligent misrepresentation. In its three points of error, Henna argues that the trial court erred
in granting Ivy's motion for summary judgment because (1) there exists a material issue of fact
regarding whether Ivy had a contractual relationship with Henna; (2) Ivy failed to prove his
affirmative defense of accord and satisfaction as a matter of law; and (3) there exists a material
issue of fact regarding Henna's negligent misrepresentation claim. Because we conclude that
material fact issues preclude summary judgment, we will reverse the summary judgment order and
remand the cause for further proceedings. 



BACKGROUND

 Ivy is an attorney licensed to practice law in the state of Texas. In 1995, Ivy began
representing Katy Culver for personal injuries and property damage she received in two
automobile collisions. At the time of her first collision, Culver was driving a Geo Prizm which
she had purchased from Henna three months earlier. After the collision, Culver had her car towed
to Henna for repairs. Less than one week after getting her car back from Henna, Culver was
involved in another collision. Culver had her car towed to a different body shop, where she was
told that the repairs performed by Henna following the first collision had been substandard. 

 Culver went to Henna and attempted to settle the dispute regarding the substandard
repairs. She spoke with the dealership owner, Louis Henna, and Henna's finance manager,
Belinda Pierce, about purchasing a different vehicle at a reduced price as consideration for her
forgiveness of any claim. The negotiations failed to resolve the dispute, and Culver asked Ivy to
resolve the matter on her behalf. 

 Ivy and Henna reached an agreement whereby Henna would sell Culver a new car 
at dealer cost and keep Culver's payments below $300 per month. Henna arranged for General
Motors Acceptance Corporation ("GMAC") to finance Culver's car and Pierce informed Ivy that
Culver's payments would be $273 per month contingent upon a $2,600 down payment. Ivy told
Pierce that although Culver did not have $2,600 at the time, he would make the down payment
from the proceeds of Culver's pending personal injury claim when it settled. 

 The parties dispute whether they agreed that the down payment would be sent to
GMAC or to Henna. Ivy contends that he agreed to send the payment directly to GMAC. Henna
contends that the parties agreed the down payment would go to Henna.

 On November 9, 1995, Ivy sent a letter to GMAC, but in care of Pierce at Henna,
memorializing their agreement and indicating that if Culver's case had not settled within 90 days
the $2,600 down payment would be paid within 120 days regardless. In the letter, Ivy wrote:


We represent Katy Culver for personal injuries sustained in automobile accidents
on July 27, 1995, and October 3, 1995. We agree to pay $2,600.00 toward the
purchase of a 1995 Geo Prizm LSI at the time of settlement of her case or one
hundred twenty (120) days from the date of this letter, whichever first occurs.



(Emphasis added). The letter did not specify to whom the payment would be sent. In addition to
their disagreement over the intended payment recipient, the parties dispute whether Ivy personally
guaranteed the down payment in his letter. On November 17, 1995, without Ivy present, Culver
signed a financing agreement with GMAC. 

 On or about March 1, 1996, Culver's first case settled and Ivy set aside $2,600 for
the down payment on the vehicle. Ivy sent the payment directly to GMAC. Henna contends that
it suffered a $2,600 loss when Ivy sent the payment to GMAC. Henna points out that the GMAC
financing agreement lists the agreed purchase price as $18,687.50. GMAC only agreed to finance
$16,087.50, which left $2,600 to be paid to Henna. Because the $2,600 down payment was sent
to GMAC, it was applied to the $16,087.50 financing price. As a result, Henna never received
the down payment and Culver's monthly payments were reduced from $273 to about $100 per
month.

 Henna brought suit against both Culver and Ivy, alleging claims of breach of
contract and negligent misrepresentation. Henna argued that Culver was contractually obligated
to pay $2,600 to Henna and that Ivy assumed personal responsibility for ensuring that the payment
was made in accordance with the letter and financing agreement. Ivy moved for summary
judgment as to all claims asserted against him. The trial court severed the claims against Ivy from
the case against Culver and granted Ivy's motion for summary judgment. Henna contends that
summary judgment was improper because there existed material issues of fact regarding whether
Ivy had a contractual relationship with Henna and whether Ivy committed the tort of negligent
misrepresentation. 


STANDARD OF REVIEW

 The standards for reviewing a motion for summary judgment are well established: 
(1) the movant for summary judgment has the burden of showing that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is
a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant
will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. See Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 When a defendant seeks to obtain summary judgment based on a plaintiff's inability
to prove its case, the defendant must conclusively disprove at least one element of each of the
plaintiff's causes of action. See Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). 
If the defendant disproves one of the essential elements of a cause of action, the burden shifts to
the plaintiff to produce evidence that raises a fact issue as to the negated element. See City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). Conversely, a defendant
seeking summary judgment based on an affirmative defense has the burden of proving conclusively
every element of the defense as a matter of law. See Johnson & Johnson Med., Inc. v. Sanchez,
924 S.W.2d 925, 927 (Tex. 1996). Because the propriety of a summary judgment is a matter of
law, we review the trial court's decision de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695,
699 (Tex. 1994).


DISCUSSION

Breach of Contract Claim

 In its first point of error, Henna argues that the trial court erred in granting Ivy's
motion for summary judgment because Henna raised a material issue of fact regarding whether Ivy
had a contractual relationship with Henna. The parties dispute (1) whether Ivy personally assumed
responsibility for the down payment, and (2) whether the parties agreed that the payment would
be sent to Henna or to GMAC. 


 Ivy argues that he acted on Culver's behalf as her attorney at all times and thus did
not personally contract with Henna. Henna contends Ivy assumed personal liability through his
letter guaranteeing payment. When an agent contracts for the benefit of a disclosed principal, the
agent is not personally liable for the contracts he makes. Nagle v. Duncan, 570 S.W.2d 116, 117
(Tex. App.--Houston [1st Dist.] 1978, writ dism'd w.o.j.). However, the parties to a contract
can alter this basic principle so that the agent will be liable on the contract. Id. An attorney acting
as an agent for a litigant may assume special liability on a contract by expressly or impliedly
agreeing to substitute his own responsibility for the responsibility of his client or pledging to add
his personal responsibility. Id. 

 Henna contends that Ivy took on the role of guarantor in the letter he sent to
GMAC, care of Henna. Henna argues that although the $2,600 paid to GMAC was taken from
Culver's settlement proceeds, Ivy personally guaranteed payment to Henna within 120 days if the
settlement had not yet occurred. Thus, Henna argues that Ivy assumed ultimate responsibility for
the debt left unpaid following Culver's settlement. In support, Henna contends that the language
in Ivy's letter bolsters the argument that Ivy personally guaranteed payment. Ivy chose the word
"we" to refer to his law firm and subsequently wrote, "We agree to pay $2,600." Finally, Henna
points out that in his deposition, Ivy testified that although he did not like advancing money to
clients, he agreed to send GMAC a letter promising that the $2,600 would be paid. Henna
contends that this was an implied promise to pay the $2,600 if Culver did not.


 Conversely, Ivy claims that at all times Henna acknowledged and understood that
Ivy was only acting on behalf of Culver as her attorney, and that Henna never relied on Ivy's
alleged representation that Ivy would make the payment if Culver did not. However, because we
review this matter on summary judgment, we must accept evidence favorable to the nonmovant
as true. Nixon, 690 S.W.2d at 549. Moreover, conflicting evidence regarding the assumption of
personal liability is to be resolved by the trier of fact. Mediacomp v. Capital Cities
Communication, 698 S.W.2d 207, 211 (Tex. App.--Houston [1st Dist.] 1985, no writ). 

 Ivy contends that conflicting evidence on liability is irrelevant because the confusion
over the payment arrangements precluded the formation of a contract. Ivy argues that if Henna
bases Ivy's contractual obligation on the letter, no contract was formed because the parties did not
mutually agree whether the payment would be sent to Henna or GMAC. Ivy relies upon a line of
cases which hold that in order to form a valid contract, the parties must mutually assent to all the
essential terms of the contract. Ludlow v. DeBerry, 959 S.W.2d 265, 272 (Tex. App.--Houston
[14th Dist.] 1997, no writ); Calvin v. Koltermann, Inc. v. Underream Piling Co., 563 S.W.2d
950, 956 (Tex. Civ. App.--San Antonio 1977, writ ref'd n.r.e.). Ivy argues that at all times, he
thought he was to send the payment to GMAC, despite Henna's protestations otherwise. Ivy
addressed his letter to GMAC, in care of Pierce at Henna. Ivy argues that Henna may have
expected to receive the payment directly, but never corrected or clarified the agreement after he
addressed the letter to GMAC. Ivy argues that since there was no meeting of the minds on the
payment arrangement, there was no contract.


 Henna argues that Ivy knew to send the payment to Henna because Ivy dealt
primarily with Pierce at Henna in negotiations for the car purchase. Additionally, Henna argues
that Ivy should have understood from reading the financing agreement that Henna's purchase price
exceeded the amount GMAC agreed to finance by $2,600, and that this sum was necessarily due
Henna.

 When a party contests whether there was a meeting of the minds, the determination
of the existence of a contract is a question of fact. Hallmark v. Hand, 885 S.W.2d 471, 476 (Tex.
App.--El Paso 1994, writ denied). The parties' conduct may convey an objective assent to the
terms of an agreement, and whether their conduct evidences their agreement is a question to be
resolved by the finder of fact. Ishin Speed Sport, Inc. v. Rutherford, 933 S.W.2d 343, 348 (Tex.
App.--Fort Worth 1996, no writ).

 We hold that material issues of fact exist regarding (1) whether Ivy's conduct
constituted an assumption of personal liability for the down payment, and (2) whether there was
a material misunderstanding between the parties regarding to whom the payment would be made
which precluded the formation of a contract. Consequently, Ivy failed to establish the absence of
a contractual agreement between Ivy and Henna as a matter of law and summary judgment was
improper.


Accord and Satisfaction Affirmative Defense 

 Ivy contends that, even if his letter to Henna created a contractual agreement,
summary judgment was proper based upon the affirmative defense of accord and satisfaction. 
Henna argues that Ivy failed to prove each element of accord and satisfaction as a matter of law. 
The affirmative defense of accord and satisfaction requires a new contract, express or implied, in
which the parties agree to discharge the existing obligations by other means. Jenkins v. Henry C.
Beck Co., 449 S.W.2d 454, 455 (Tex. 1969); see also City of Houston v. First City, 827 S.W.2d
462, 472 (Tex. App.--Houston [1st Dist.] 1992, writ denied). When a defendant moves for
summary judgment on its affirmative defense, it must prove each element of its defense as a matter
of law, leaving no issues of material fact. See Johnson & Johnson, 924 S.W.2d at 927. 

 Ivy argues that Culver's execution of the financing agreement superceded his letter
to Henna and thus satisfied the test for accord and satisfaction. Ivy contends that since he did not
join Culver in signing the financing agreement, Henna should have understood that Culver alone
was liable. However, Culver's financing agreement was with GMAC, not Henna. Henna never
agreed to waive the $2,600 obligation in exchange for Culver's signing the GMAC agreement. 
While Ivy may not be liable to GMAC for any of the financed amount, Culver's financing
agreement with GMAC did nothing to alter Ivy's alleged obligations to Henna. Thus, to the extent
that Ivy's letter created a contractual obligation to Henna, that obligation survived Culver's
financing agreement with GMAC. Ivy failed to prove as a matter of law his affirmative defense
of accord and satisfaction. We sustain Henna's first two points of error, and therefore need not
consider its remaining point of error. 

.



CONCLUSION

 Having found that material fact issues exist, we reverse the summary judgment
order and remand the cause for further proceedings.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Reversed and Remanded 

Filed: April 29, 1999

Do Not Publish



no contract.


 Henna argues that Ivy knew to send the payment to Henna because Ivy dealt
primarily with Pierce at Henna in negotiations for the car purchase. Additionally, Henna argues
that Ivy should have understood from reading the financing agreement that Henna's purchase price
exceeded the amount GMAC agreed to finance by $2,600, and that this sum was necessarily due
Henna.