**Opal THORNTON, Appellant,**

v.

**D.F.W. CHRISTIAN TELEVISION, INC. and Robert R. D'Andrea, Appellees.**

No. 05–93–00131–CV.

Court of Appeals of Texas, Dallas.

June 30, 1995.

Crole A. Faulkner, Bedford, Joseph E.
Burns, Ferguson & Burns, P.C., Dallas, Joe
B. Abbey, Law Offices of Joe B. Abbey,
Dallas, for Appellant.

Stuart B. Lumpkins, Jr., William L. La-
tham, McDonald Sanders, P.C., Fort Worth,
for Appellees.

Before LAGARDE, CHAPMAN and
MORRIS, JJ.

## OPINION ON REHEARING

MORRIS, Justice.

By order issued October 27, 1994, this
Court granted in part and denied in part
appellees' motion for rehearing and vacated
the Court's June 7, 1994 judgment in this
case. Accordingly, we withdraw our June 7,
1994 opinion in this case. This is now the
Court's opinion.

Opal Thornton appeals the trial court's
judgment in favor of D.F.W. Christian Tele-
vision, Inc. (DFW) in this breach of contract
and fraud action. Appellant asserts twenty
points of error. She attacks the trial court's
findings of facts and conclusions of law. She
contends there was no evidence or insuffi-
cient evidence to support the trial court's
findings. She argues the trial court erred as
a matter of law in concluding that (1) the
agreement between the parties obligated her
to obtain a building site for the purpose of
constructing a television station, (2) the
agreement allowed DFW to recover $600,000
it paid in escrow if she breached that obli-
gation, (3) she defrauded DFW and Robert
R. D'Andrea (D'Andrea) in connection with
the agreement, and (4) DFW suffered dam-

age in the form of loss of the $600,000 it paid into escrow as a result of her breach of the agreement. She also contends the trial court erred in refusing to enter her proposed findings of fact and conclusions of law on her breach of contract and fraud claims against DFW and D'Andrea. Because we hold the trial court incorrectly construed the contract between the parties, we reverse and render in part, reverse and remand in part, and affirm in part.

## FACTS

Appellant was attempting to obtain a construction permit from the Federal Communications Commission (FCC) for a new television station to be broadcast on channel 55 at Lake Dallas, Texas. D'Andrea desired to purchase from appellant an interest in the construction permit. On October 6, 1987, appellant as seller, DFW as buyer, and D'Andrea as guarantor of DFW's performance, entered into a purchase agreement. Pursuant to that agreement, appellant agreed to (1) form a corporation, (2) obtain consent from the FCC to assign the construction permit to the corporation, and (3) sell to DFW forty-nine percent of the newly formed corporation's stock. DFW agreed to pay into escrow $600,000 pending appellant's performance of these obligations under the agreement. The agreement provided the $600,000 would be released from escrow to appellant upon delivery of forty-nine percent of the corporation's stock to the escrow agent. If appellant failed to deliver the stock within ninety days of the agreement, the agreement provided the escrow agent was to return the $600,000 to DFW.

With respect to the forty-nine percent of the stock in the newly formed corporation to be issued to DFW, the agreement provided:

> The said stock certificates shall be issued in the name of [DFW] and will be held in escrow pending performance under the Lease/Purchase Agreement set forth hereinbelow. [DFW] will have its full 49 percent voting and equity rights in the Corporation during the period of time when the stock remains in escrow, except that it will be unable to transfer the stock, put the stock up as collateral for a loan, or otherwise encumber the stock without the express consent of [appellant]. To demonstrate its good faith, [appellant] shall likewise deliver its shares equalling 51 percent of the Corporation to the escrow. [Appellant's] stock shall be released in the event [DFW] fails to perform under this Agreement.

In addition to paying $600,000 into escrow, the agreement imposed the following obligations on DFW:

> ... [DFW] agrees to construct the physical facilities required to place the station in operation in accordance with the attached outline of equipment or equivalent, but [DFW's] obligation under this provision shall fully be satisfied when it has supplied the equipment costing the aggregate amount shown on the said attachment. [DFW] shall lease the facilities to the Corporation under a Lease/Purchase Agreement. ...

Further, in the event DFW failed to build the technical facilities and lease them to appellant, the agreement provided in paragraph 8:

> ... [DFW] agrees that its 49 percent stock will be returned to [appellant]. The escrow agent is hereby authorized to return the stock to [appellant] upon adequate proof from [appellant] that [DFW] has not built the station as required. If said failure to construct is due to a breach by [DFW], [appellant] will not be required to return the escrow money previously paid hereunder.

DFW deposited $600,000 into escrow pursuant to the agreement. Appellant formed the corporation (TV–55) and deposited all stock into escrow pursuant to the agreement. The escrow agent delivered the $600,000 to appellant. The station was never constructed or put into operation. The escrow agent later delivered to appellant one hundred percent of the TV–55 stock. Appellant sued DFW and D'Andrea asserting claims for breach of contract and fraud. Appellant contended DFW's failure to construct the station constituted a breach of the agreement. DFW and D'Andrea filed a counterclaim for breach of contract and fraud. They contended appellant first breached the agreement

because it was her obligation to obtain a site for the television station, which she never did. DFW and D'Andrea asserted appellant never had a valid construction permit because she never obtained a location for the station. Because appellant never obtained a valid construction permit, DFW and D'Andrea contended their obligation under the agreement to construct the station never arose.

The case was tried before the court. At the conclusion of the evidence, the trial court rendered judgment for DFW in the amount of $600,000 plus attorney's fees. The judgment provided: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant, D.F.W. Christian Television, Inc., recover on its Counterclaim from Opal Thornton, Plaintiff, actual damages in the sum of $600,000.00." The trial court's judgment did not specify whether this award was based on DFW's breach of contract or fraud claim. The trial court, however, made numerous findings of fact and conclusions of law. The trial court found appellant received the $600,000 from the escrow agent and was the one hundred percent shareholder of TV-55. The trial court concluded the agreement imposed the obligation on appellant to obtain a site for the television station. The trial court found appellant breached that obligation by failing to obtain a site and to secure a valid construction permit. The trial court concluded such breach excused DFW's obligation to construct the station. The trial court concluded paragraph 8 of the agreement provided that DFW would recover the $600,000 it paid into escrow on appellant's breach of the agreement by failing to obtain a valid construction permit. The trial court found DFW was entitled to recover the $600,000 paid to appellant out of escrow as a result of appellant's breach of the agreement by failing to obtain a valid construction permit. The trial court also made findings and conclusions in favor of DFW and D'Andrea on their fraud claim. The trial court, however, did not make a finding or conclusion on the amount of damages DFW and D'Andrea were entitled to because of the fraud the trial court found. The trial court awarded DFW its attorneys fees on the basis of its breach of contract claim.

Notwithstanding the findings and conclusions in favor of D'Andrea, in its judgment the trial court did not award D'Andrea any affirmative relief. Moreover, in its judgment the trial court specifically recited that all relief not granted was denied. Under the *Aldridge* presumption of finality and pursuant to the trial court's recitation that all relief not granted was denied, the trial court effectively ordered that D'Andrea take nothing on all his claims. *See North E. Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 896–98 (Tex.1966). D'Andrea did not file a cross-point of error complaining of the trial court's take nothing judgment against him. To the extent D'Andrea complained for the first time about the trial court's take nothing judgment against him in DFW's and his motion for rehearing, we hold that his complaint is untimely. *See generally, Davis v. City of San Antonio,* 752 S.W.2d 518, 520–22 (Tex. 1988); *Haynes v. McIntosh,* 776 S.W.2d 784, 788 (Tex.App.—Corpus Christi 1989, writ denied); *In re R.L.H.,* 771 S.W.2d 697, 702 (Tex.App.—Austin 1989, writ denied).

## DISCUSSION

### Appellant's Multifarious Brief

In addition to filing eighty-three designated findings of facts, the trial court filed fifty designated conclusions of law. In the front of appellant's brief, she enumerates twenty separate points of error. Under most of her points of error, appellant makes parenthetical references to the numbers used by the trial court to designate its findings of fact and conclusions of law. Appellant in some instances parenthetically refers to the numbers of her proposed findings and conclusions not filed by the trial court. In other instances, and also in parentheses under certain enumerated points of error, appellant makes narrative statements, which we take to be an attempt to amplify the point of error stated.

More specifically, appellant's points of error 1, 3, 5, 7, 8–10, 12, 14–16, and 19–20 attack certain findings of fact and conclusions of law made by the trial court. These points of error challenge a total of forty-one separate findings of fact and forty-one separate

conclusions of law. None of these points of error, however, *contain separate subdivisions or separate record references for each challenged finding or conclusion.* Appellant's points of error 2, 4, 6, 17, and 18 challenge the trial court's refusal to enter forty of her proposed findings of fact and ten of her proposed conclusions of law. Appellant's points of error 11 and 13 challenge the trial court's rulings on certain motions related to DFW's and D'Andrea's fraud claim.

In its body, appellant's brief contains three separate sections of arguments and authorities. Each section contains a general subject heading. Seventeen of appellant's twenty points of error are *consolidated* under these three subject headings for purposes of argument. Under each subject heading, there is a purported restatement of which points of error are included in that group, but the points are neither restated nor argued separately: they are merely summarized in the restatement. Points of error 17, 18, and 19 are not grouped under any of the three separate subject headings and, after being enumerated as points of error in the front of the brief, are not seen again. Moreover, there is no separate recitation of relevant facts for each section, and references to the record are interwoven in the argument without reference to any particular point of error. It is difficult to determine from appellant's brief which arguments and record references support what particular points of error or more specifically what particular findings and conclusions are being challenged by either the argument made or authorities cited.

■ Rule 74 of the appellate rules of procedure contains the following requirements for points of error and arguments and authorities in briefs:

A statement of the points upon which an appeal is predicated shall be stated in short form without argument and be separately numbered. In parentheses after each point, reference shall be made to the page of the record where the matter complained of is to be found. A point is sufficient if it directs the attention of the appellate court to the error about which complaint is made.... Complaints related to several issues or findings relating to one ground of recovery or defense may be combined in one point, if separate record references are made.

\* \* \* \* \* \*

A brief of the argument may present separately or grouped the points of error relied upon for reversal. The arguments shall include: (1) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue.

TEX.R.APP.P. 74(d), (f). A point of error is multifarious if it embraces more than one specific ground of error or attacks several distinct and separate rulings of the trial court. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 823 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). This Court may disregard any assignment of error that is multifarious. *Id.* at 824.

■ In this case, appellant's points of error are multifarious because each point attacks several separate and distinct findings of fact, conclusions of law, or other rulings by the trial court. *See* TEX.R.APP.P. 74(d); *Rio Delta Land Co. v. Johnson,* 566 S.W.2d 710, 713–14 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). This multifariousness is compounded by the consolidation of points of error *and* argument in the separate sections of the brief. Argument in a party's brief can be as multifarious as a designated point of error.

■ In addition, appellant's points of error fail to meet the requirements of rule 74 because there are no separate record references for each point of error and each challenged finding or conclusion and, further, because there is no separate recitation of facts for the three different sections where appellant's argument and authorities are found. *See* TEX.R.APP.P. 74(d), (f). Nevertheless, this Court may consider multifarious points of error or points of error that do not meet the briefing requirements of rule 74 if, after reviewing the argument, we can determine with a reasonable certainty the alleged error about which complaint is made. TEX. R.APP.P. 74(d); *Champion v. Wright,* 740

S.W.2d 848, 850–51 (Tex.App.—San Antonio 1987, writ denied); *Rio Delta Land Co.*, 566 S.W.2d at 713. We do so here notwithstanding the difficulty presented by the brief.

### Construction of the Agreement

In particular, we are able to discern a distinct argument under appellant's points of error 5 and 8 because these points of error attack as a matter of law the trial court's conclusions of law construing paragraph 8 of the purchase agreement, which the parties specifically pointed out and argued at oral argument before us. Accordingly, pursuant to rule 74(d), we will address the issue of the proper construction of paragraph 8 of the purchase agreement.

The trial court found appellant breached the purchase agreement because her failure to obtain a site for the station prevented her from obtaining a valid construction permit from the FCC. The trial court also found DFW's failure to construct the station was excused by appellant's breach of the agreement. With respect to the construction of paragraph 8 of the agreement, the trial court made the following conclusions of law:

24. [DFW's] failure to construct the physical facilities as required under the Purchase Agreement did not constitute a breach of said Agreement. The court concludes that under Paragraph 8 of the Purchase Agreement, that [appellant's] remedy for [DFW's] failure to construct (in that said failure does not constitute a breach of the Agreement) is to receive the forty-nine percent (49%) of [TV-55's] stock issued in the name of [DFW] which was originally placed in escrow by [appellant].

25. The Court further concludes from the wording of Paragraph 8, that the parties intended that [appellant] was to return to [DFW] the $600,000 in the event that [DFW's] failure to construct the physical facilities was not a result of a breach of the Purchase Agreement.

26. In that [DFW's] failure to construct the physical facilities was not a breach of the Purchase Agreement, [appellant], pursuant to Paragraph 8 of the Purchase Agreement, is required to return the $600,000 cash to Bob D'Andrea.

27. [Appellant], by failing to return the $600,000 to [DFW] as is required under Paragraph 8 of the Purchase Agreement, breached the Purchase Agreement.

28. As a result of [appellant's] breach of the Purchase Agreement, [DFW] is entitled to recover damages in the amount of $600,000 from Thornton.

In her fifth and eighth points of error, appellant attacks as a matter of law the trial court's conclusions relating to the construction of paragraph 8 of the purchase agreement. Conclusions of law are reviewable when attacked as erroneous as a matter of law. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds by Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 894 (Tex.1991). We review conclusions of law drawn from facts found to determine their correctness. *Id.* Incorrect conclusions of law will not require reversal, however, if the controlling findings of facts will support a correct legal theory. *Valencia v. Garza*, 765 S.W.2d 893, 898 (Tex.App.—San Antonio 1989, no writ). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Simpson v. Simpson*, 727 S.W.2d 662, 664 (Tex.App.—Dallas 1987, no writ).

In this case, neither party pleaded that the purchase agreement was ambiguous. When there is no pleading of ambiguity with respect to an agreement, all questions relating to the agreement's construction are questions of law. *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 617 (Tex.App.—Dallas 1991, no writ); *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied). Because ambiguity has not been pleaded and construction is a question of law, we independently construe the purchase agreement in determining the correctness of the trial court's conclusions of law relating to the construction of that agreement. *See MJR Corp.*, 760 S.W.2d at 10.

In construing an unambiguous agreement, this Court's primary concern is to ascertain and give effect to the intentions of the parties as expressed in the agreement.

*Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983); *Phillips,* 812 S.W.2d at 618. To achieve this objective, we must construe the meaning of the language used in the agreement. *Phillips,* 812 S.W.2d at 618. When the language is plain, it must be enforced as written. *Id.* We consider the entire agreement in an effort to harmonize and give effect to all its terms so that none will be rendered meaningless. *Coker,* 650 S.W.2d at 393. No single provision of the agreement taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole agreement. *Id.* Words and phrases in agreements should be given their ordinary, popular, and common meaning. *Phillips,* 812 S.W.2d at 618. Language in an agreement should be accorded its plain, grammatical meaning unless the parties intended otherwise as such intent is evidenced from the agreement. *Id.*

When we apply these rules of construction, the plain language of the purchase agreement provides that if DFW does not build the station, then appellant receives DFW's forty-nine percent share of the stock in TV–55. If DFW's failure to build the station constitutes a breach under the agreement, then the plain language of the agreement provides appellant does not have to return the $600,000 paid in escrow by DFW. The language of the agreement is clear that the $600,000 was to be paid into escrow by DFW as consideration for appellant forming TV–55 and depositing its stock into escrow. The agreement specifically provides the $600,000 would be returned to DFW only in the event appellant did not form TV–55 and deposit its stock into escrow. Accordingly, the trial court implied a provision in the purchase agreement when it construed paragraph 8 to mean that if appellant breached the agreement by failing to obtain a valid construction permit, then DFW was entitled to a return of the $600,000 it paid into escrow.

■■■■ Implied provisions in agreements are not favored by the law. *Sumrall v. Russell,* 255 S.W. 239, 240 (Tex.Civ.App.—El Paso 1923, writ dism'd w.o.j.). Implied provisions are permitted only on the ground of necessity. *Danciger Oil & Refining Co. v. Powell,* 137 Tex. 484, 490, 154 S.W.2d 632,

635 (1941); *Calvin V. Koltermann, Inc. v. Underream Piling Co.,* 563 S.W.2d 950, 957 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). A court should not read into an agreement additional provisions unless necessary to effectuate the intention of the parties as disclosed by the agreement as a whole. *Danciger Oil & Refining Co.,* 137 Tex. 484, 490, 154 S.W.2d at 635; *Calvin V. Koltermann, Inc.,* 563 S.W.2d at 957. An implied provision must rest entirely on the presumed intention of the parties as gathered from the terms actually expressed in the agreement. *Danciger Oil & Refining Co.,* 137 Tex. 484, 490, 154 S.W.2d at 635; *Calvin V. Koltermann, Inc.,* 563 S.W.2d at 957. It must appear the implied provision was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, or it must appear necessary to infer such a provision in order to effectuate the full purpose of the agreement as a whole as gathered from the written instrument. *Danciger Oil & Refining Co.,* 154 S.W.2d at 635; *Calvin V. Koltermann, Inc.,* 563 S.W.2d at 957. It is not enough that an implied provision is necessary to make an agreement fair or that without such provision the agreement would be improvident, unwise, or unjust; the implied provision must arise from the presumed intent of the parties as gathered from the instrument as a whole. *Danciger Oil & Refining Co.,* 154 S.W.2d at 635.

■■■■ In this case, we hold the purchase agreement cannot be construed to contain the implied term that if appellant breached the agreement by failing to obtain a valid construction permit, thus excusing DFW's failure to build the station, DFW is entitled to recover the $600,000 it paid into escrow. The purchase agreement as a whole shows no intent of the parties to provide as a specific remedy to DFW the return of the $600,000 if appellant breached the agreement in such a manner. To the contrary, the agreement provides the $600,000 is to be returned to DFW only in the event appellant failed to form TV–55 and deposit its stock in escrow.

Return of the $600,000 is not the only possible remedy that could have been provided to DFW if appellant breached the agreement by failing to obtain a valid construction

permit. There are numerous remedies the parties could have agreed to provide to DFW in the event of appellant's breach by failing to obtain the permit from the FCC. To imply return of the $600,000 to DFW as the remedy for such a breach when the parties chose not to do so themselves and when there is nothing else in the agreement indicating an intent to do so is improper. In fact, the agreement shows the parties intended to provide that particular remedy only for appellant's breach of the agreement by failing to form TV–55 and deposit its stock in escrow. It is undisputed that appellant performed these obligations. Because the document shows no intent to provide a return of the $600,000 to DFW if appellant breached by failing to obtain the construction permit, this implied term was not necessary to effectuate the purpose of the purchase agreement. We hold, therefore, that the trial court's construction of paragraph 8 of the purchase agreement to mean appellant was to return to DFW the $600,000 if she breached the agreement by failing to obtain a valid construction permit was erroneous. We sustain appellant's fifth and eighth points of error to the extent she complains that the trial court erred as a matter of law in so construing the agreement.

## Appellees' Contract Claim

■ Appellant asserts generally that the trial court erred in awarding DFW damages on its contract claim. Appellant complains about the trial court's findings and conclusions to the effect that she breached the agreement by failing to obtain a valid construction permit, thus excusing DFW's obligation to build the station and entitling DFW to recover its $600,000 escrow money. The only evidence of damage to DFW and D'Andrea as a result of appellant's breach of the purchase agreement by failing to obtain a valid construction permit was the loss of the $600,000 placed in escrow. The trial court made findings and conclusions that the loss of the $600,000 in escrow was DFW's only damage. There is no evidence and the trial court made no findings or conclusions with respect to any other damage suffered by DFW as a result of appellant's breach for failure to obtain a valid permit. Because the

agreement provides for return of the $600,000 to DFW only in the event appellant failed to form TV–55 and deposit its stock in escrow and not for failure to obtain a valid construction permit, and because DFW proved no other damage, DFW failed to prove any recoverable contract damages. Also, because it failed to prove recoverable damages, its entitlement to attorney's fees on its contract claim against appellant has not been shown. We conclude, therefore, the trial court's judgment on DFW's contract claim cannot be sustained on any legal theory supported by the evidence.

## Appellant's Contract Claim

■ Even though appellant's brief is multifarious, we are able to ascertain that she is complaining in points of error 1–4, 6–7, 9, and 14–16 about the trial court's findings and conclusions on her breach of contract claim. She contends she is entitled to recover damages from DFW because the evidence shows DFW was required to obtain a site for the television station and DFW's failure to construct the station constituted a breach of the agreement. Even if the trial court erred in making these findings and conclusions, appellant has received all the relief she is entitled to under the purchase agreement because of DFW's or D'Andrea's failure to construct the station.

The agreement provides that if DFW fails to construct the station, appellant's remedy is to retain all of the TV–55 stock. The agreement further provides that if DFW's failure to build the station is a breach of the agreement, appellant does not have to return the $600,000 paid for the contractual obligations she performed. It is undisputed appellant has the stock and the $600,000. Because appellant has already received all the relief she is entitled to if the trial court had found and concluded she performed under the agreement by obtaining a valid permit and further had found DFW breached by failing to construct the station, we cannot conclude the trial court erred in making its findings and conclusions that she was not entitled to damages or attorney's fees under her breach of contract claim. We overrule points of error 1–4, 6–7, 9, and 14–16.

### Fraud Claims

In her remaining points of error, appellant complains about the trial court's findings, conclusions, and rulings relating to the parties' fraud claims. In points of error 17, 18, and 19, appellant complains about the trial court's failure to enter findings and conclusions favorable to her on her fraud claim against DFW and D'Andrea. As we noted previously, appellant failed to argue these three points in any of the three sections in her brief. Accordingly, these points are waived. Tex.R.App.P. 74(f); *Essex Crane Rental Corp. v. Striland Constr. Co.,* 753 S.W.2d 751, 756 (Tex.App.—Dallas 1988, writ denied); *Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 810, 815 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). In points of error 10, 11, 12, 13, and 20, appellant complains about the trial court's findings and conclusions and rulings on certain motions that she defrauded DFW and D'Andrea. Because of her multifarious brief, we are unable to discern what part of her argument, authorities cited, and few record references relate to which point of error appellant attempts to assert. Appellant consolidates points of error 10, 11, and 20 in one multifarious, summarized point of error. Appellant has not restated points of error 12 and 13, and we are unable to ascertain which part of her argument relates to those points. We hold appellant has waived these points of error.

We have held DFW cannot recover on its contract claim. Accordingly, we reverse the trial court's judgment awarding DFW attorney's fees and prejudgment interest on the contract claim. We render judgment that DFW take nothing on its claim for attorney's fees. Because the trial court made findings that support DFW's alternative fraud claim, DFW is entitled to judgment on its alternative theory of recovery. *See Boyce Iron Works, Inc. v. Southwestern Bell Telephone Co.,* 747 S.W.2d 785, 787 (Tex. 1988); *St. Paul Ins. Co. v. Rakkar,* 838 S.W.2d 622, 630–31 (Tex.App.—Dallas 1992, writ denied). "[W]hen one or more elements [of a ground of recovery] have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." Tex.R.Civ.P. 299. In its judgment, the trial court did not limit its $600,000 damage award to DFW's breach of contract claim. Based upon the trial court's $600,000 damage award, we hold that the omitted unrequested element of fraud damages is $600,000. A finding of $600,000 in fraud damages is supported by the evidence and, pursuant to rule 299, is supplied by a presumption in support of the trial court's judgment. Accordingly, we affirm the award of $600,000 in favor of DFW against appellant. *See generally Chitsey v. National Lloyds Ins. Co.,* 738 S.W.2d 641, 643–44 (Tex.1987).

DFW also may be entitled to equitable prejudgment interest. Therefore, we remand the case for the purpose of the trial court reforming its judgment to include equitable prejudgment interest if the trial court decides within its discretion such interest is to be awarded on that claim. *See generally Chitsey v. National Lloyds's Ins. Co.,* 698 S.W.2d 766, 772 (Tex.App.—Austin 1985), *aff'd,* 738 S.W.2d 641 (Tex.1987). In all other respects, we affirm the trial court's judgment.