**D.F.W. CHRISTIAN TELEVISION, INC. and Robert R. D'Andrea, Individually, Petitioners,**

v.

**Opal THORNTON, Respondent.**

**No. 94–1210.**

Supreme Court of Texas.

May 10, 1996.

Rehearing Overruled Dec. 13, 1996.

William L. Latham, Stuart B. Lumpkins, Jr., Fort Worth, for petitioners.

Jerome H. Ferguson, III, Joseph E. Burns, Dallas, Carol A. Faulkner, Bedford, Joe B. Abbey, Dallas, for respondent.

### Opinion

PER CURIAM.

In this case, we must interpret an agreement that provided for the purchase of stock in a corporation and for the construction of a television station. Because we hold that the seller breached the agreement and that the buyer is therefore entitled to recover prejudgment interest and attorney's fees, we reverse the judgment of the court of appeals, 925 S.W.2d 17.

Opal Thornton obtained a construction permit from the Federal Communications Commission to build a television station. Robert D'Andrea, individually and as president of DFW Christian Television ("DFW"), signed an agreement with Thornton in which Thornton agreed to form a corporation ("TV–55"), obtain consent from the FCC to assign the construction permit to the corporation, and sell 49% of the newly-formed corporation's stock to DFW. DFW agreed to pay $600,000 into an escrow account pending Thornton's performance of her obligations, and DFW agreed to construct the physical facilities re-

quired to operate the station. D'Andrea personally guaranteed DFW's performance.

The agreement provided that the $600,000 would be released to Thornton upon her delivery of 49% of TV–55 stock to the escrow agent. If Thornton failed to deliver the stock within 90 days of execution of the agreement, the escrow agent was to return the $600,000 to DFW. In another section of the contract, the parties agreed that DFW's 49% share of the stock would be returned to Thornton if DFW failed to build the facilities and that Thornton would not be required to return the escrow money if the failure to construct the television station was due to DFW's breach of the agreement.[1]

DFW deposited the $600,000 into escrow. Thornton incorporated TV–55 and deposited all of the company's stock into the escrow account. The escrow agent duly dispersed the $600,000 to Thornton. However, a site was not procured and the station was not constructed by DFW. Thornton refused to return the $600,000. Thornton sued DFW and D'Andrea for breach of contract and fraud based on DFW's failure to build the station, and DFW and D'Andrea counterclaimed, alleging that Thornton breached the purchase agreement by failing to obtain a construction site for the station and by failing to return the $600,000. DFW also claimed that Thornton fraudulently induced DFW into signing the purchase agreement by representing that she had obtained a site for the television station and its broadcast tower.

After a bench trial, the trial court concluded as a matter of law that Thornton was entitled to retain the $600,000 only in the event DFW's failure to construct the facilities was due to its breach of contract. The trial court further found that TV–55 was obligated to provide a site for a tower and other physical facilities for the station and that this obligation was a condition precedent to DFW's obligation to build the station. It concluded that DFW's failure to build the station was not a breach of the parties' agreement and that Thornton breached the agreement by failing to return DFW's $600,000. With regard to DFW's fraud claim, the trial court found that Thornton made material, false representations to induce DFW into the agreement and that DFW relied on those representations, causing it damage. The trial court rendered judgment in favor of DFW for actual damages in the amount of $600,000, attorney's fees of $105,000 through the trial plus additional amounts in the event of appeal, and prejudgment interest of $127,528.[2]

Thornton appealed, and the court of appeals held that the trial court's interpretation of the agreement to require the return of DFW's $600,000 if Thornton failed to obtain a valid construction permit was in error. 925 S.W.2d at 21. The court reversed the award of attorney's fees and prejudgment interest on DFW's contract claim. However, it affirmed the trial court's award of $600,000 in actual damages based on the trial court's

---

1. The relevant portions of the agreement state:
    2. In consideration of the performance by [Thornton] of the covenants and agreements contained herein, [DFW] shall pay into escrow ... $600,000.... The above sum shall be released to [Thornton] upon delivery of stock shares equalling 49 percent of the Corporation holding the KLDT permit to the escrow agent; provided that if such delivery has not been made within 90 days of this date, then the escrow agent shall deliver the said $600,000 together with interest to [DFW].
    \* \* \* \* \* \*
    8. If [DFW] does not build the technical facilities and lease them to [Thornton] in accordance with the terms hereinabove, [DFW] agrees that its 49 percent stock will be returned to [Thornton]. The escrow agent is hereby authorized to return the stock to [Thornton] upon adequate proof from [Thorn-

ton] that [DFW] has not built the station as required. If said failure to construct is due to a breach by [DFW], [Thornton] will not be required to return the escrow money previously paid hereunder.

2. While the trial court's judgment provided that Thornton take nothing from DFW or D'Andrea, it did not award D'Andrea any affirmative relief on his counterclaims against Thornton. Rather, it provided that all relief not expressly granted in the judgment was denied. D'Andrea raised the trial court's denial of his counterclaims for the first time in his motion for rehearing in the court of appeals, which held that he had waived any error in that regard. 925 S.W.2d at 26. DFW's and D'Andrea's brief in this Court does not address this holding. We therefore do not consider D'Andrea's counterclaims.

fraud findings. The court of appeals did not address Thornton's challenge to the trial court's findings that Thornton was obligated to find a site for the station and that her failure to do so excused DFW from building a station. The court apparently concluded that Thornton's complaints were waived because they were contained in multifarious points of error and briefing. 925 S.W.2d 17.

All parties filed applications for writ of error. DFW maintains that the contract is unambiguous and must be construed to require Thornton to return DFW's $600,000 if the station is not built and DFW is not in breach. DFW seeks attorney's fees and interest based on its contract claim. Thornton challenges the court of appeals' holding with respect to fraud but does not complain of the court of appeals' failure to address her arguments regarding the obligation to find a site for the station.

 We agree with DFW that the express language of the parties' agreement limits the circumstances under which Thornton may retain the $600,000. Because DFW did not breach the agreement, the contract requires Thornton to return the money.

The contract specifically addresses what was to happen if DFW failed to construct the station. First, Thornton was entitled to the return of DFW's 49% share of the stock. This was to occur regardless of whether DFW breached the agreement in failing to build the station. In contrast, Thornton's right to the $600,000 was not unconditional if the station was not constructed. The provision of the agreement at issue states that "[i]f [DFW's] failure to construct is due to a breach by [DFW], [Thornton] will not be required to return the escrow money previously paid hereunder." This provision expressly contemplates that Thornton is required to return the $600,000 in the event that DFW's failure to construct the station is not due to DFW's breach.

Thornton breached her contract with DFW when she did not return the $600,000. The court of appeals therefore erred in reversing the trial court's award of prejudgment interest on DFW's contract claim. *See* Tex.Rev.Civ.Stat. art. 5069–1.03 (providing for interest at the rate of 6% on contracts ascertaining the sum payable). The court of appeals also erred in reversing the trial court's award of attorney's fees. *See* Tex.Civ.Prac. & Rem.Code § 38.001(8) (allowing recovery of reasonable attorney's fees on a valid contract claim).

Because we hold that DFW is entitled to recover under the terms of the contract, we need not address Thornton's points of error regarding DFW's right to recover under the trial court's fraud findings. Accordingly, pursuant to Texas Rule of Appellate Procedure 170, without hearing oral argument, the Court grants the parties' applications for writ of error, reverses the judgment of the court of appeals, and renders judgment in favor of DFW.