**Opinion filed March 7, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00085-CV

_____

## IN THE INTEREST OF C.W.J. AND C.M.J., CHILDREN

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. 44,689-C**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order denying a petition to modify the parent-child relationship. Appearing pro se on appeal, Appellant presents two issues. In his first issue, Appellant contends that the trial court erred when it denied his petition to modify the parent-child relationship. Specifically, Appellant contends that (a) the evidence was insufficient to support the trial court's denial of Appellant's petition to modify, (b) the current parenting plan does not represent the legislature's intent that parents enjoy maximum time with their children, (c) the current parenting plan does not represent the legislature's intent in favor of preventing relitigation of

possession issues, (d) the standard possession order is unconstitutional, (e) the application of res judicata is unconstitutional as applied to Appellant, (f) the trial court erred in failing to apply *Matthews v. Eldridge*,[1] (g) the modification statute is unconstitutional, (h) the trial court had no discretion to deny Appellant's request for the "expanded" standard possession schedule, and (i) the trial court did not have jurisdiction to deny the petition to modify.

In his second issue, Appellant contends that the trial court erred in failing to modify the possession schedule from awarding him Thursday night possession to awarding him Wednesday night possession because (a) the current parenting plan violates Section 110.003 of the Texas Civil Practice and Remedies Code, (b) the current parenting plan violates Appellant's right to freedom of religion under the United States and Texas Constitutions, and (c) Appellant is entitled to a modification of the parenting plan pursuant to Section 153.253 of the Texas Family Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 110.003 (West 2019); TEX. FAM. CODE ANN. § 153.253 (West 2014). We affirm the trial court's order denying Appellant's petition to modify.

*Background Facts*

Appellant and Appellee are the parents of C.W.J. and C.M.J. On August 12, 2013, the trial court entered an Agreed Final Decree of Divorce designating Appellant and Appellee as joint managing conservators of the children. The parties executed the divorce decree as a result of mediation. In the divorce decree, the trial court ordered Appellant and Appellee to comply with the terms of the standard possession order in the absence of a mutual agreement regarding possession of the children, ordered Appellant to pay $1,000 per month in child support and to maintain

---

[1]424 U.S. 319 (1976).

health insurance for the children, and awarded both parents the right to direct the moral and religious training of the children.

Approximately three years later, Appellant filed a petition to modify the parent-child relationship. In his petition, Appellant requested that the conditions for possession of the children be modified, setting forth a "week on/week off" possession schedule and allocating one evening per week when the parent not in possession can have dinner with the children. Appellant further requested the appointment of a parenting facilitator; a "mutual right of first refusal for all time periods over 3 hours that a party is unable to exercise their possession of the children";[2] and the right to claim one child as a dependent for federal income tax purposes or, in the alternative, the right to alternate years claiming both children as dependents. While awaiting a hearing on Appellant's petition to modify, Appellant and Appellee agreed to follow the "expanded" standard possession schedule. *See* FAM. § 153.317 (providing for alternate beginning and ending possession times for the periods described in the standard possession order).

The trial court held a hearing on Appellant's petition to modify on February 14, 2017. At the hearing on Appellant's petition to modify, Appellant submitted an exhibit summarizing his requested relief. In Appellant's summary of requested relief, Appellant repeated his request for a "week on/week off" possession schedule and added, in the alternative, a request for the "expanded" standard possession schedule. Additionally, Appellant's summary of requested relief included a request that his child support obligation be terminated or, in the alternative, that it be reduced and that Appellee be ordered to reimburse him for 50%

---

[2]As opposed to using a nonfamily-member caregiver, the "right of first refusal" that Appellant requested would require the parent in possession of the children to contact the other parent and offer possession to the other parent if the possessing parent or a family member would not be with the children for a period of three hours or more.

of the monthly cost of health insurance for the children. Finally, during his testimony, Appellant complained that Appellee has "a majority of the Sundays" and requested that he "get Wednesdays as well" so that he could attend church with the children.

Appellant testified that, at the time he and Appellee divorced, he did not read the standard possession order set out in the divorce decree. Initially, Appellant and Appellee mutually agreed on a possession schedule of roughly every other weekend. In April 2016, Appellee began to strictly enforce the standard possession order, which awarded Appellant possession of the children on the first, third, and fifth weekend of every month.

Appellant worked as a roofing contractor, and his work fluctuated with the weather, particularly the occurrence of hailstorms. Prior to the divorce, Appellant often worked out of town. At some point, Appellant purchased a tow truck company to supplement his income and to allow him to be home more often. Nevertheless, Appellant testified that, since the divorce, his income has decreased. Appellant further testified that he recently changed health insurance companies and pays $450 per month for insurance for "all the kids and us."

Appellant testified that he has remarried. Appellant's household now consists of himself, his new wife, and his stepchildren. He testified that C.W.J. and C.M.J. get along well with Appellant's new family members. Appellant's wife picks the children up from school during Appellant's possession periods.

Appellant testified that Appellee had developed a close relationship with her friend, P.L., and that he believed that P.L. and P.L.'s children were essentially a part of Appellee's family. Appellant believed that Appellee's relationship with P.L. and P.L.'s recent divorce from her husband are what led to Appellee's decision to begin strictly enforcing the standard possession order.

Appellant testified that the communication between him and Appellee had declined since the divorce. Specifically, Appellant complained that Appellee used the children as intermediaries to communicate with him, rather than communicating with him directly, and that this caused him to miss events with the children. He further complained that Appellee did not inform him that the children's maternal grandfather had passed away. Finally, Appellant complained that he was never consulted regarding Appellee's decision to enroll the children in the Community Christian School in Mineral Wells.

Appellant testified that he had particular concerns regarding the religious and moral training of the children. First, Appellant stated that P.L.'s family "owns" the church that Appellee regularly attends. Appellant attended that church from 2008 until the divorce in 2013. After the divorce, however, Appellant testified that "sides were taken" among the church members. Appellant began attending a different church. Appellant testified that he had "a very big concern" with the children attending Appellee's church but that a "week on/week off" possession schedule would alleviate this concern by allowing the children to spend an equal amount of time in Appellee's church and Appellant's church. Second, Appellant and Appellee were unable to agree on which church would perform C.M.J.'s baptism. Third, Appellant testified that he wished to enroll the children in a Wednesday night program at his church and "requested from [Appellee] that [he] get Wednesdays" as opposed to the Thursday night possession provided by the standard possession order. Finally, Appellant testified that he had religious objections to C.M.J., a female, dressing in her brother's clothing and wearing her hair cut short.

Appellee testified that, from the time of the divorce until approximately April 2016, Appellant requested possession of the children approximately one day a week. This possession schedule was very flexible in order to accommodate Appellant's work schedule. At the time, Appellee noticed that the lack of a fixed schedule was

5

putting stress on the children. In response, Appellee decided to enforce the standard possession order. Appellee testified that the children began doing better once a fixed routine had been established.

Appellee further testified that, when she began enforcing the standard possession order, Appellant did not "respond too well." Appellee contradicted Appellant's testimony that she and Appellant were unable to effectively communicate. Appellee stated that she and Appellant primarily communicated via text message. She stated that, when there was a breakdown in communication, it was usually because Appellant became "combative." However, she believed that they could both be reasonable and effectively co-parent.

Appellee expressed concern with the continued use of the expanded standard possession schedule. Under the expanded standard possession schedule, Appellee was responsible for getting the children ready for school every Friday morning and every Monday morning following the first, third, and fifth weekend of every month. *See* FAM. § 153.317(a) (providing that possession times end at the time the child's school resumes after the weekend or on Friday). On these mornings, Appellant had some difficulty making sure the children were appropriately dressed in their school uniforms. This issue caused friction between Appellant, Appellee, the children, and the school employees. Appellee testified that Appellant had, on occasion, been late dropping the children off and picking them up from school.

Appellee testified that, initially, the children had a difficult time adjusting to the expanded standard possession schedule. Since implementing the new schedule, Appellant began showing up at Appellee's home unannounced. This made Appellee uncomfortable and confused the children. Accordingly, Appellee testified that she believed it would be in the best interest of the children to return to the standard possession order outlined in the divorce decree. At the conclusion of the hearing, the trial court denied Appellant's petition.

*Analysis*

As an initial matter, we note that Appellant's first and second issues are multifarious because they combine multiple points of error within a single issue. "An issue is multifarious when it generally attacks [a] trial court's order with numerous arguments." *Hamilton v. Williams*, 298 S.W.3d 334, 338 n.3 (Tex. App.—Fort Worth 2009, pet. denied). "We may disregard any assignment of error that is multifarious." *Id.* However, an appellate court has the discretion to consider a multifarious issue provided it can determine, with reasonable certainty, the alleged error about which the complaint is made. *Thornton v. D.F.W. Christian Television, Inc.*, 925 S.W.2d 17, 22–23 (Tex. App.—Dallas 1995), *rev'd on other grounds*, 933 S.W.2d 488 (Tex. 1996). Here, we have attempted to make a reasonable determination of the issues raised by Appellant. Therefore, in the interest of justice, we will address Appellant's complaints to the extent that they are preserved for our consideration. *See id.*

In his first issue, Appellant contends that the trial court erred in denying his petition to modify the parent-child relationship. Appellant's first issue essentially is a claim that the trial court's ruling denied him "maximal time with his children." Appellant contends that he has a fundamental right to spend equal time with his children. Thus, Appellant's first issue addresses his request for "an equal parenting plan, week on/week off." In the alternative, Appellant seeks expanded beginning and ending periods of possession as set out in Section 153.317. In his second issue, Appellant is challenging the denial of his request to exchange Thursday night visitation for Wednesday night visitation. Thus, Appellant is not challenging the trial court's denial of his requests pertaining to the payment of child support, reimbursement of health insurance premiums, claiming children as dependents for federal income tax purposes, or the appointment of a parenting facilitator.

In his first issue, Appellant raises several constitutional challenges to the trial court's denial of his petition to modify.[3] First, Appellant contends that the standard possession order is unconstitutional because it violates his right to privacy, his right to influence and educate his children, his and the children's rights to freedom of association under the First Amendment, and his freedom of speech under the First Amendment. Second, Appellant contends that the application of res judicata is unconstitutional as applied to him. Third, Appellant contends that the trial court erred in failing to apply the *Matthews v. Eldridge* balancing test in order to determine whether he was denied his right to due process. Finally, Appellant contends that Section 156.101 of the Texas Family Code is unconstitutional because it violates his right to privacy, his right to influence and educate his children, his and his children's rights to freedom of association under the First Amendment, his freedom of speech under the First Amendment, and his right to equal protection under the law and because the "best interest of the child" requirement is vague, arbitrary, overbroad, underinclusive, retroactive, and impossible to prove.

We note at the outset that Appellant did not present any of these constitutional challenges to the trial court. Rule 33.1 of the Texas Rules of Appellate Procedure requires that a party lodge a "timely request, objection, or motion" to present a complaint for appellate review. TEX. R. APP. P. 33.1(a)(1); *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999). Appellant contends that he may raise these issues for the first time on appeal because, "[w]hen a court fails to apply the supreme law of the land, this is fundamental error." Thus, Appellant asserts that an allegation that the trial court violated the law or the constitution presents a claim of fundamental error that he may urge for the first time on appeal. We disagree.

---

[3]Appellant raises additional constitutional complaints concerning religious freedom that will be addressed in our discussion of Appellant's second issue.

As a general rule, a constitutional claim must have been asserted in the trial court in order to be raised on appeal. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *In re U.P.*, 105 S.W.3d 222, 237 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see In re L.M.I.*, 119 S.W.3d 707, 708 (Tex. 2003) ("[A]dhering to our preservation rules isn't a mere technical nicety; the interests at stake are too important to relax rules that serve a critical purpose."). "Requiring parties to preserve their complaints in family-law cases furthers the legislative intent that such cases be resolved expeditiously and with finality." *In re A.L.E.*, 279 S.W.3d 424, 431 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

A constitutional challenge may be presented for the first time on appeal if the challenge presents a fundamental error. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). As noted by the Texas Supreme Court: "In light of our strong policy considerations favoring preservation, we have called fundamental error 'a discredited doctrine.'" *Id.* (quoting *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982) (per curiam)). Fundamental error has been employed in rare instances when a court lacks subject-matter jurisdiction or in juvenile delinquency cases when certain types of error are involved. *Id.* The fundamental error doctrine has not been extended to parental-rights termination cases or paternity cases. *Id.*; *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) (constitutional claim on appeal in paternity suit waived by failure to raise complaint at trial). In *Watts v. Oliver*, the Fourteenth Court of Appeals determined that the fundamental error doctrine did not apply in a suit to modify the parent-child relationship. 396 S.W.3d 124, 135–36 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Simply alleging that an error violates a party's constitutional rights is not enough to show a fundamental error. *See Sherry*, 46 S.W.3d at 861 (citing *Dreyer*, 871 S.W.2d at 698). Appellant has not presented a claim constituting fundamental

9

error. Therefore, Appellant has not preserved any of his constitutional arguments for appellate review.

Appellant also contends that the trial court lacked jurisdiction to deny his petition to modify the parent-child relationship. A contention that the trial court lacked subject-matter jurisdiction may be raised for the first time on appeal. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). However, Appellant is not asserting that the trial court did not have continuing, exclusive jurisdiction pursuant to Section 155.001 of the Texas Family Code or that the trial court lost continuing, exclusive jurisdiction pursuant to Section 155.004 of the Texas Family Code. *See* FAM. § 155.001 (West Supp. 2018) (explaining the general rule that the court acquires continuing, exclusive jurisdiction over matters in connection with a child upon rendition of a final order); *id.* § 155.004 (describing situations in which the court loses continuing, exclusive jurisdiction). Rather, Appellant contends the trial court was without jurisdiction to deny the relief he requested in his petition because the denial of his petition violated a variety of his constitutional rights. Thus, Appellant's complaint regarding jurisdiction is simply another way of arguing that the standard possession order was unconstitutional and, therefore, that the trial court erred in failing to modify it. As we discussed above, Appellant failed to preserve these complaints for appellate review.

Appellant also raises statutory challenges to the standard possession order. First, Appellant contends that the standard possession order does not represent the legislature's intent that parents enjoy maximum time with their children. Specifically, Appellant contends that the use of the standard possession order in this case is inconsistent with Section 153.001(a) (setting out the public policy of this state with regards to conservatorship, possession, and access), Section 153.251 (explaining how the guidelines in the standard possession order should be applied), and Section 153.193 (stating that restrictions on a parent's right to possession "may

10

not exceed those that are required to protect the best interest of the child") of the Texas Family Code. *See* FAM. §§ 153.001(a), .251, .193 (West 2014). Second, Appellant contends that the standard possession order does not represent the legislature's intent in favor of preventing relitigation of possession issues.

Appellant did not raise any of his statutory challenges to the standard possession order in the trial court. Thus, Appellant has not preserved his statutory challenges for appellate review. *See* TEX. R. APP. P. 33.1. Furthermore, Appellant's contention—that the standard possession order, which was incorporated into the divorce decree on August 12, 2013, is contrary to legislative intent—essentially is a collateral attack on the original decree. An attempt to judicially alter or change the substantive provisions of a final decree of divorce constitutes a prohibited collateral attack. *Hagen v. Hagen*, 282 S.W.3d 899, 905 (Tex. 2009).

Appellant contends that we should review the trial court's decision under a heightened standard of review. For this contention, Appellant relies in large part upon a concurring opinion written by Justice David Puryear of the Austin Court of Appeals in 2005. *In re J.R.D.*, 169 S.W.3d 740, 745 (Tex. App.—Austin 2005, pet. denied) (Puryear, J., concurring). Justice Puryear argued that the standards of review applied to conservatorship issues should be changed to reflect the constitutional nature of parental rights, stating: "[T]rial courts should justify deviation from maximum feasible time with both parents by clear and convincing evidence and make factual findings, and appellate courts should carefully review those findings." *Id.* However, neither the majority opinion in *J.R.D.*[4] nor any subsequent opinion that we have found from the Austin Court of Appeals has adopted this proposed

---

[4]We note that the father in *In re J.R.D.* presented many of the same constitutional and statutory complaints that Appellant is presenting in this proceeding. For example, the father asserted that he was constitutionally entitled to equal time with his children and that the best-interest-of-the-children standard interfered with his fundamental right to parent his children. *In re J.R.D.*, 169 S.W.3d at 743–44. The Austin Court of Appeals rejected these contentions. *Id.*

standard of review. *See, e.g.*, *Blackwell v. Humble*, 241 S.W.3d 707, 715 (Tex. App.—Austin 2007, no pet.); *see also In re J.R.D.*, 169 S.W.3d at 742–43 (majority opinion). Furthermore, neither the Texas Supreme Court nor any intermediate appellate court in Texas has adopted a heightened standard of review. Accordingly, we decline to adopt a heightened standard of review for reviewing the trial court's order on a petition to modify the parent-child relationship.

A trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession. Accordingly, we review a trial court's decision on whether or not to modify the parent-child relationship for a clear abuse of discretion. *In re A.J.E.*, 372 S.W.3d 696, 698 (Tex. App.—Eastland 2012, no pet.); *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily or unreasonably or when it fails to correctly analyze or apply the law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

"Under the abuse of discretion standard, issues relating to the legal and factual sufficiency of the evidence are not independent grounds of error, but only factors used in assessing whether the trial court abused its discretion." *In re A.J.E.*, 372 S.W.3d at 698. In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire: (1) did the trial court have sufficient information upon which to exercise its discretion and (2) did the trial court err in its application of discretion? *Id.* at 698–99. "An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision." *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and its findings will not be disturbed if there is evidence of

probative force to support them. *London v. London*, 192 S.W.3d 6, 14 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Appellant contends that there is insufficient evidence to support the trial court's denial of his petition to modify the parent-child relationship. A trial court may modify an order that provides the terms and conditions of conservatorship if the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the prior order and if the modification would be in the best interest of the child. FAM. § 156.101(a)(1). The party seeking modification bears the burden of establishing a material and substantial change in circumstances from the date of the prior order, and if he fails to meet that burden, the trial court must deny the petition. *Zeifman*, 212 S.W.3d at 589. Whether circumstances have materially and substantially changed is a fact-specific determination not guided by rigid or definite rules. *Id.* at 593. The findings of a trial court on modification of conservatorship are to be based on a preponderance of the evidence. FAM. § 105.005.

In any case involving an issue of possession and access to a child, the best interest of the child must always be the primary consideration of the trial court. *Id.* § 153.002; *In re S.N.Z.*, 421 S.W.3d 899, 910 (Tex. App.—Dallas 2014, pet. denied) ("The focus of the analysis is on the best interest of the child, not the best interest of the parent."). In determining the best interest of a child, a court may consider, among other things, the desires of the child, the child's current and future emotional and physical needs, any emotional or physical danger to the child, the parental abilities of the individual seeking custody and that person's plans for the child, the stability of the home, acts or omissions by a parent tending to show the existing relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing factors used for determining best interest of the child). In the context of a custody modification, other factors to

consider include the child's need for stability and the need to prevent constant litigation in child custody cases. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

The trial court did not issue findings of fact and conclusion of law. Therefore, it is implied that the trial court made all necessary findings of fact to support its judgment. *Woodford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Allen v. Mancini*, 170 S.W.3d 167, 170 (Tex. App.—Eastland 2005, pet. denied).

Appellant alleged the following changed circumstances: (1) the children were older and attending school, (2) Appellee developed a close relationship with P.L., (3) Appellee began strictly enforcing the standard possession order, (4) Appellant remarried and lived with his wife and stepchildren, (5) Appellant's income decreased, (6) communication between Appellant and Appellee deteriorated, and (7) Appellant was attending a different church. The most prominent among Appellant's allegations of changed circumstances was that, since the divorce, Appellant and Appellee began attending different churches and developed a disagreement over the religious training of the children. We note that the evidence on many of these matters was contested at the hearing on the motion to modify. Specifically, Appellee disagreed that these matters rose to the level of a material and substantial change. Appellee also disagreed that Appellant's requested modification was in the best interest of the children.

In order to prove a material and substantial change, the evidence must show what conditions existed at the time of the entry of the prior order and what material changes have occurred in the intervening period. *In re C.C.J.*, 244 S.W.3d 911, 919 (Tex. App.—Dallas 2008, no pet.). The "record must contain both historical and current evidence of" the parties' circumstances at the time the existing order was entered and at the time modification is sought; "[w]ithout both sets of data, the court has nothing to compare and cannot determine whether a change has occurred." *Zeifman*, 212 S.W.3d at 594 n.1.

We conclude that there is sufficient evidence to support the trial court's determination that Appellant failed to prove a material and substantial change of circumstances or that his proposed week on/week off possession would not be in the best interest of the children. The fact that the children are older, in and of itself, is not a material and substantial change unless changed needs are shown. *Id.* at 593. Appellant testified that Appellant, Appellee, P.L., and P.L.'s husband were close friends during the marriage. When asked about the relationship between his and P.L.'s families at that time, Appellant replied, "We were a little too close. . . . Much too close as a matter of fact." This testimony indicates that Appellee's close relationship with P.L. had existed prior to and since the parties divorced. Accordingly, there is evidence that Appellee's relationship with P.L. was not a material and substantial change because the close relationship existed before the divorce.

We also disagree that Appellee's decision to strictly enforce the standard possession order was a material and substantial change. Although Appellee and Appellant did not initially strictly abide by the terms of the standard possession order, the fact that the standard possession order was incorporated into the divorce decree is evidence that the parties anticipated following this schedule. *See In re H.N.T.*, 367 S.W.3d 901, 905 (Tex. App.—Dallas 2012, no pet.) (holding that when the original divorce decree did not include a geographic restriction, the custodial parent's move to a new city "represent[ed] an anticipated circumstance because Father knew nothing within the decree prohibited Mother from moving with H.N.T. at anytime to anywhere"). As was the case with the children getting older, the enforcement of the standard possession order was an anticipated circumstance of the parties' divorce decree. The fact that divorced spouses attend different churches and have trouble communicating would also appear to fall in the category of circumstances that are anticipated at the time of the divorce.

15

Courts have recognized that the remarriage by a parent can constitute a material change. *See In re S.N.Z.*, 421 S.W.3d 899, 909 (Tex. App.—Dallas 2014, pet. denied). However, a requested change must still be in the best interest of the children. There is sufficient evidence to support a finding that Appellant failed to show that a modification from the standard possession order to a "week on/week off" possession schedule would be in the best interest of the children. Appellant testified that the expanded standard possession schedule was working out "wonderfully." However, Appellee's testimony contradicted this assertion. Appellee testified that, after implementing the new schedule, Appellant would show up unannounced in order to drop off the children's clothing and personal effects. These unexpected visits made Appellee uncomfortable and confused the children. Appellee further testified that, on the days Appellant had possession of the children, he had difficulty getting the children to and from school and ensuring that the children wore the appropriate school uniform. Appellee did not believe that continuing the extended possession times would be in the children's best interest. We will defer to the trial court's credibility determinations and will not substitute our judgment for that of the factfinder. *See In re A.L.E.*, 279 S.W.3d at 427.

Appellant contends that the trial court had no discretion to deny Appellant's request for the expanded standard possession schedule because his post-decree election to use the alternate beginning and ending times under Section 153.317 of the Texas Family Code does not require proof of a material and substantial change. We disagree. The Texas Family Code provides for alternate ending and beginning possession times to the standard possession order. FAM. § 153.317. Under the Family Code, "[i]f elected by a conservator, the court shall alter the standard possession order . . . to provide for one or more of the following alternate beginning and ending possession times . . . unless the court finds that the election is not in the best interest of the child." *Id.* at § 153.317(a). "A conservator must make an election

16

under Subsection (a) before or at the time of the rendition of a possession order." *Id.* at § 153.317(b). Thus, while Section 153.317 provides for an election, the election must be made "before or at the time of the rendition of a possession order." *Howe v. Howe*, 551 S.W.3d 236, 260 (Tex. App.—El Paso 2018, no pet.) (quoting Section 153.317(b)). Appellant did not make an election for the extended possession period at the time the divorce decree was entered.

Appellant relies on *In re J.R.D.* and *Mason-Murphy v. Grabowski* for his contention that he was not required to prove a material and substantial change in order to be entitled to make an election under Section 153.317. In *In re J.R.D.*, the father filed a petition to modify the parent-child relationship, requesting an increase in his possession times and a reduction in child support. *In re J.R.D.*, 169 S.W.3d at 741–42. The trial court granted the father's request for "Thursday overnights," pursuant to Section 153.317, but denied all other relief.[5] *Id.* The father appealed, arguing that he had "an absolute right" to Sunday overnight possession under Section 153.317. *Id.* at 743. The Austin Court of Appeals disagreed that Sunday overnight possession was "an absolute right" and held that, in order to be entitled to Sunday overnight possession, as described in Section 153.317, the father was required to prove a material and substantial change. *Id.* at 743–44 (citing *In re Davis*, 30 S.W.3d 609, 612–13 (Tex. App.—Texarkana 2000, no pet.)). As we discussed in greater detail above, there is sufficient evidence to support a determination by the trial court that Appellant failed to show a material and substantial change. Therefore, under *In re J.R.D.*, Appellant did not have the right to the extended standard possession schedule described in Section 153.317.

---

[5]Appellant relies heavily on the fact that the trial court in *In re J.R.D.* awarded the father Thursday overnights "as permitted by an election under the standard possession schedule." *In re J.R.D.*, 169 S.W.3d at 742. However, the court noted that the trial court's order granting Thursday overnights was not appealed and expressly declined to address whether a material and substantial change supported the modification. *Id.* at 743 n.2.

In *Mason-Murphy*, the mother appealed the trial court's order granting a petition to modify the parent-child relationship. *Mason-Murphy v. Grabowski*, 317 S.W.3d 923, 924–25 (Tex. App.—Austin 2010, no pet.). The parties agreed to an order modifying the possession schedule, shifting the weekends that the father had possession of the child. *Id.* at 925. After the court announced the order, but before the hearing adjourned, the father made an election under Section 153.317(a). *Id.* The Austin Court of Appeals held that, in this situation, the father had the right to make the election. *Id.* Here, however, the trial court did not grant a modification of the possession schedule. Appellant contends that, when the trial court denied his petition to modify the possession schedule, the standard possession order was "re-issued," allowing him the opportunity to make an election under Section 153.317 at that time. We disagree. "A conservator must make an election . . . before or at the time of the rendition of a possession order." FAM. § 153.317(b). Here, the possession order was rendered in 2013.

We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court erred in failing to modify the possession schedule from Thursday nights to Wednesday nights because the current parenting plan violates both Section 110.003[6] of the Texas Civil Practice and Remedies Code and Appellant's right to freedom of religion under the United States and Texas Constitutions. Appellant did not raise these issues before the trial court, and they do not rise to the level of fundamental error. Therefore, Appellant has not preserved these issues for appellate review. Moreover, Appellant was likely barred from raising a claim under Section 110.003. "A person must bring an action

---

[6]The Texas Religious Freedom Restoration Act (TRFRA) provides that "a government agency may not substantially burden a person's free exercise of religion [unless it] demonstrates that the application of the burden to the person . . . is in furtherance of a compelling governmental interest [and] is the least restrictive means of furthering that interest." *Barr v. City of Sinton*, 295 S.W.3d 287, 289 (Tex. 2009) (quoting Section 110.003(a)-(b)).

to assert a claim for damages under this chapter not later than one year after the date the person knew or should have known of the substantial burden on the person's free exercise of religion." CIV. PRAC. & REM. § 110.007. The divorce decree was signed on August 12, 2013.

Appellant further contends that he is entitled to a modification of the parenting plan pursuant to Section 153.253 of the Texas Family Code. Section 153.253 provides that, if the standard possession order is "unworkable or inappropriate" due to "the work schedule or other special circumstances of the managing conservator, the possessory conservator, or the child, or the year-round school schedule of the child," the court shall order a possession schedule as similar as possible to the standard possession order. FAM. § 153.253.

Appellant contends that his inability to enroll the children in a Wednesday night church program makes the standard possession order unworkable. Appellant testified that he was requesting Wednesday nights because he hoped to enroll the children in this program.

We disagree with Appellant that his inability to enroll the children in a Wednesday evening religious class renders the standard possession order unworkable. Although Appellant complained that Appellee had "a majority of the Sundays," in reality, the standard possession order awards Appellant every first, third, and fifth Friday of each month until 6:00 p.m. the following Sunday. Further, Appellant conceded that the standard possession order awards both him and Appellee the right to direct the moral and religious training of the children. Therefore, the evidence did not establish that the standard possession order was inappropriate or unworkable with respect to Appellant's right to direct the children's religious training. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

March 7, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[7]

Willson, J., not participating.

---

[7]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.